Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sol Bravman, Carmen González Hernández<br><br>    Peticionarios<br><br>          v.<br><br>Consejo de Titulares del Condominio Palma Real<br><br>    Recurridos | Certiorari<br><br>2011 TSPR 189<br><br>183 DPR \_\_\_\_ |

Número del Caso:   CC-2010-275

Fecha: 14 de diciembre de 2011

Tribunal de Apelaciones:

          Región Judicial de San Juan, Panel III

Jueza Ponente:      Hon. Zadette Bajandas Vélez

Abogado de la Parte Peticionaria:

          Lcdo. Edgardo E. Betancourt

Abogado de la Parte Recurrida:

          Lcdo. Roberto A. Rivera Ruiz

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sol Bravman, Carmen González
Hernández

    Peticionarios

       v.

                        CC-2010-0275     Certiorari

Consejo de Titulares del
Condominio Palma Real

    Recurridos

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTINEZ

San Juan, Puerto Rico, a 14 de diciembre de 2011.

El recurso ante nuestra consideración nos permite resolver si la figura de la prescripción adquisitiva o usucapión tiene cabida dentro del régimen de propiedad horizontal regulado por la Ley Núm. 103-2003 (Ley de Condominios), 31 L.P.R.A. sec. 1291 *et seq*.

Además, debemos determinar si el Consejo de Titulares puede usucapir parte de un apartamento inscrito como privativo en el Registro de la Propiedad y, en consecuencia, afectar su cabida y destinarlo a un uso distinto al que consta en la escritura matriz y en los planos presentados ante tal Registro, sin contar con el consentimiento unánime de los integrantes del régimen.

Concluimos que la Ley de Condominios impide la adquisición por prescripción adquisitiva o usucapión de los elementos comunes, pero permite la de los elementos privativos. Resolvemos que no se puede variar el uso y destino ni la descripción registral del bien adquirido sin el consentimiento unánime de todos los titulares. A su vez, determinamos que el Consejo de Titulares está impedido de usucapir parte del apartamento privativo ante nuestra consideración debido a que tal actuación quebranta el propósito por el cual dicho organismo fue creado y contraviene la Ley de Condominios.

**I**

Los hechos ante nuestra consideración son sencillos y conciernen al apartamento 1-G del Condominio Palma Real. El referido condominio fue sometido al régimen de propiedad horizontal en el año 1968. La escritura matriz del Condominio Palma Real no expresa que en la primera planta del edificio haya un área destinada para instalaciones eléctricas o telefónicas. Este es un hecho estipulado por las partes. La escritura sí describe la cabida física del apartamento 1-G. Ésta incluye el área del clóset en cuestión, la cual consta delimitada en los planos presentados ante el Registro de la Propiedad como parte del referido apartamento.

El Consejo de Titulares ha utilizado un área del armario del apartamento 1-G para la instalación de los contadores eléctricos que suplen electricidad a los

apartamentos 1-H, 1-J, 1-K, 2-F, 2-G, 2-H, 2-I, 2-J y 2-K del condominio.

El 28 de junio de 2001 el Sr. Sol Bravman y la Sra. Carmen González Hernández (esposos Bravman-González) adquirieron de F.M. Investment Corporation el apartamento 1-G en el aludido condominio. El 12 de junio de 2003 los esposos Bravman-González presentaron una demanda contra el desarrollador del condominio y la Junta de Directores. En ella, alegaron que al poco tiempo de adquirir su apartamento se percataron que el clóset del dormitorio principal había sido segregado mediante la construcción de una pared. En consecuencia, solicitaron que se les restituyera el uso y posesión de la referida área. Posteriormente, enmendaron la demanda para incluir al Consejo de Titulares. Aluden que dichas actuaciones violaron el Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291.

En respuesta, el Consejo de Titulares alegó que el clóset nunca fue parte del apartamento 1-G. Adujo que desde la construcción del condominio dicha área se utilizó para la instalación de los contadores eléctricos sin que se enmendara la escritura matriz. Además, arguyó que ha poseído y adquirido la referida área por prescripción adquisitiva extraordinaria.

Posteriormente, y con miras a finiquitar las controversias, las partes presentaron el 28 de febrero de 2006 una estipulación en la que exponían que el Consejo de Titulares entregaría a los esposos Bravman-González la

posesión de una porción del clóset donde están ubicados los contadores de energía eléctrica. La segregación de dicho espacio se haría conforme a lo requerido por la Autoridad de Energía Eléctrica y a la aprobación de dicha agencia. Para lograr el acuerdo, el Consejo de Titulares sufragaría los honorarios de $1,500 del ingeniero electricista por el diseño de los planos y la presentación ante la Autoridad de Energía Eléctrica y los honorarios ascendentes a $14,500 para realizar el referido trabajo. Por su parte, los esposos Bravman-González aportarían la suma de $1,000 para la construcción de una pared en bloques de cemento que separaría el área de los contadores con el área entregada por el Consejo de Titulares y cualquier diferencia en el costo de la pared sería costeada por dicho organismo.[1] El acuerdo debía ser ratificado por el Consejo de Titulares en una asamblea debidamente convocada a tales efectos.

La estipulación fue acogida por el Tribunal de Primera Instancia mediante una sentencia emitida el 13 de marzo de 2006. Sin embargo, posteriormente fue dejada sin efecto debido a que no fue ratificada en la correspondiente asamblea convocada por el Consejo de Titulares.

Entrabados los reclamos, el 22 de julio de 2009 el Tribunal de Primera Instancia emitió una sentencia en la que aludió a los hechos reseñados y concluyó que el Consejo de Titulares adquirió el clóset por prescripción

---

[1]La estipulación incluía los planos anejados con los cambios propuestos.

adquisitiva extraordinaria. Ello, al ostentar la posesión pública y pacífica en concepto de dueño de forma continua e ininterrumpida por más de treinta (30) años. El foro primario expresó que el dueño del apartamento nunca tuvo acceso al clóset ni prestó su autorización, permiso o licencia para que el Consejo de Titulares lo ocupara. A su vez, advirtió que el dueño original interpuso una demanda en el año 1993 que fue desestimada por incumplimiento e inactividad mediante una sentencia que advino final y firme, por lo que adjudicó que ésta no tuvo efecto interruptor para el cómputo del término de prescripción adquisitiva.

Finalmente, el Tribunal de Primera Instancia coligió que no existe conflicto entre la Ley de Condominios y la prescripción adquisitiva contenida en el Código Civil que impida la usucapión en un complejo constituido en el régimen de propiedad horizontal. Además, estimó que el Consejo de Titulares cumplió con los requisitos para adquirir el armario por prescripción adquisitiva extraordinaria.

Inconformes, los esposos Bravman-González acudieron al Tribunal de Apelaciones en donde expusieron que el clóset no es susceptible de ser adquirido por usucapión y que de permitirse tal actuación variaría el uso comprendido del bien inmueble sin el consentimiento unánime de los titulares. El foro intermedio emitió una sentencia mediante la cual confirmó el dictamen del Tribunal de Primera Instancia.

En desacuerdo, los esposos Bravman-González acuden ante nos y sostienen que erró el Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia y al permitir la adquisición por usucapión del área privativa para destinarla a un uso comunal sin el consentimiento unánime de los condóminos.

Examinado el recurso ante nos, expedimos el mismo y procedemos a resolverlo en los méritos.

## II

Nuestro ordenamiento jurídico permite la adquisición del dominio y todos los derechos reales en virtud de la figura de la prescripción adquisitiva o usucapión. Art. 1830 del Código Civil, 31 L.P.R.A. sec. 5241. Para que ésta se configure, es indispensable que estemos ante una cosa o un derecho susceptible de apropiación por determinado tiempo y con arreglo a las condiciones que dicta la ley. Art. 1836 del Código Civil, 31 L.P.R.A. sec. 5247; J.R. Vélez Torres, Curso de Derecho Civil: los Bienes y los Derechos Reales, Madrid, Offirgraf, 1983, T. II, pág. 263. Una vez establecido lo anterior es importante distinguir entre la prescripción adquisitiva ordinaria y la extraordinaria. Repasamos brevemente estas figuras jurídicas.

Tanto la usucapión ordinaria como la extraordinaria requieren que exista una posesión ininterrumpida, pública, pacífica y en concepto de dueño por el término fijado en la ley. Artículos 1840 y 1841 del Código Civil, 31

L.P.R.A. secs. 5261 y 5262; Sánchez González v. Registrador, 106 D.P.R. 361, 375 (1977).

En la prescripción adquisitiva ordinaria se requiere la posesión mediante la concurrencia de buena fe y justo título junto al transcurso de un tiempo fijado por ley, a saber: diez (10) años. Artículo 1857 del Código Civil, 31 L.P.R.A. sec. 5278. El concepto de buena fe consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella y que podía transmitir su dominio. Artículo 1850 del Código Civil, 31 L.P.R.A. sec. 5271; Ramos v. Ríos, 79 D.P.R. 738, 740-741 (1956), Rivera v. Meléndez, 72 D.P.R. 432, 439-440 (1951). Por su parte, el título se entiende justo cuando es legalmente suficiente para transferir el dominio o derecho real de cuya prescripción se trate. Artículo 1852 del Código Civil, 31 L.P.R.A. sec. 5273. Además, conforme al Artículo 1853 del Código Civil, 31 L.P.R.A. sec. 5274, el título debe ser verdadero y válido. Sin embargo, el justo título no significa que el título deba ser perfecto. Lizardi v. Caballero, 65 D.P.R. 83, 93 (1945).

Por su parte, la prescripción adquisitiva extraordinaria no requiere el elemento de buena fe ni de justo título, por lo que se le requiere al poseedor un término más prolongado para que pueda adquirir la cosa o el derecho. En ésta, el término requerido es de treinta (30) años para los bienes inmuebles. Artículo 1859 del Código Civil, 31 L.P.R.A. sec. 5280; Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154, 182 (2005).

El Código Civil exige una posesión en concepto de dueño porque "sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir de título para adquirir el dominio". J. Puig Brutau, _Fundamentos de Derecho Civil_, Tomo III, Vol. I, 3ra ed., Bosch, Barcelona, 1989, pág. 318. Un inmueble se posee en concepto de dueño por aquel que la opinión general o la percepción pública entienden es dueño unido a los actos que éste realiza con relación a la propiedad, independientemente de la creencia que pueda tener el propio poseedor. _Vélez Cordero v. Medina_, 99 D.P.R. 113, 119 (1970).

Es por ello que la norma vigente sostiene que los actos de carácter posesorio ejecutados por licencia o mera tolerancia del dueño no son suficientes para que se cumplan con los requisitos de la prescripción extraordinaria ya que falta el requisito de la posesión en concepto de dueño. Es decir, aquel que posee con permiso, licencia o autorización del dueño no puede adquirir un derecho real por prescripción adquisitiva debido a que nunca estuvo en posesión de la propiedad en concepto de dueño. En este sentido, es doctrina firmemente establecida en el derecho civil que como norma general todos los que poseen en nombre o en representación de otro no pueden adquirir el dominio poseído por ellos, ni ningún otro derecho, por virtud de prescripción ordinaria o extraordinaria. Véase, _Sánchez González v. Registrador_, _supra_, pág. 375; _Dávila v. Córdova_, 77 D.P.R. 136, 143-148

(1954), Sucn. Maldonado v. Sucn. Maldonado, *supra*, pág. 183. En estos casos estamos ante un precarista.

Igualmente, debemos recordar que se presume que la posesión se sigue disfrutando en la misma forma en que se adquirió si no se presenta prueba en contrario. Art. 365 del Código Civil, 31 L.P.R.A. sec. 1426; Vélez Cordero v. Medina, supra, pág. 120.

Como la adquisición por prescripción requiere que se cumpla con determinado tiempo debemos indicar que la posesión se entiende interrumpida por: (1) la citación judicial hecha por el poseedor, aunque sea por un mandato del tribunal o un juez incompetente; (2) mediante el requerimiento judicial o notarial, siempre que dentro de los dos meses de practicado se presente ante el tribunal o el juez la demanda sobre posesión o dominio de la cosa cuestionada; y (3) por el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véanse, Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. secs. 5266, 5268 y 5269.

En cuanto a la interrupción por citación judicial, ésta se considerará que no interrumpe el término para adquirir por prescripción adquisitiva cuando: (1) fuere nula por falta de las solemnidades legales; (2) el actor desistiere de la demanda o dejare caducar su reclamo; y (3) si el poseedor fuere absuelto en la demanda. Art. 1846 del Código Civil, 31 L.P.R.A. sec. 5267.

## III

Las controversias planteadas requieren que dilucidemos si la figura de la prescripción adquisitiva tiene cabida dentro del régimen de propiedad horizontal y las consecuencias que ello acarrea. Para atender los referidos planteamientos nos remitimos primeramente a los principios y al propósito del régimen de propiedad horizontal. Veamos.

Los principios del referido sistema en Puerto Rico surgen del Art. 403 del Código Civil de 1902 que luego se convirtió en el Art. 330 del Código Civil de 1930, 31 L.P.R.A. sec. 1275; Castle Enterprises, Inc. v. Registrador, 87 D.P.R. 775 (1963). Posteriormente, los países europeos y americanos comenzaron una corriente de legislar leyes especiales sobre la llamada propiedad horizontal con miras a atender las insuficiencias de los códigos civiles vigentes. Como corolario de dicha tendencia, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 421 de 13 de mayo de 1951 (Ley Núm. 421) para enmendar en términos generales el Art. 330 del Código Civil, supra. Sin embargo, en el año 1958 la Asamblea Legislativa justipreció que la Ley Núm. 421 fue insuficiente sobre los aspectos vitales de la propiedad horizontal, como por ejemplo: (a) el nacimiento y extinción de ésta; (b) el régimen de su administración; (c) la organización del Registro de la Propiedad; (d) gravámenes; y (e) el equilibrio de derechos y deberes entre los propietarios. Por tanto, la legislatura aprobó

la Ley Núm. 104 de 25 de junio de 1958 (Ley de Propiedad Horizontal), 31 L.P.R.A. sec. 1291 *et seq.*[2]

La Ley de Propiedad Horizontal siguió como modelo la Ley-Decreto Núm. 407 de 16 de septiembre de 1952 de la República de Cuba. Originalmente, se preparó un proyecto basado en la Ley de Argentina que fue descartado para utilizar como marco la Ley de Cuba, por guardar ésta mayor consonancia con nuestro Derecho. Véase, S. E. Casellas, Comentarios y Notas, Legislación, En Torno a la Nueva Ley de la Propiedad Horizontal, 28 Rev. Jur. U.P.R. 301 (1958-1959).

La adopción de la institución de la propiedad horizontal respondió al interés de fomentar la viabilidad para adquirir propiedades y a su vez atender el problema de vivienda en nuestra isla aprovechando el escaso terreno disponible. Diario de Sesiones (Cámara), Vol. X, pág. 1649 (1958); E. Vázquez Bote, Prolegómenos al Régimen de la Horizontalidad en Derecho Puertorriqueño, 16 Rev. Der. P.R. 301, 308 (1976-1977); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225, 242 (1978). La Ley de Propiedad Horizontal no derogó el Art. 330 del Código Civil sobre el régimen de pisos. Éste funciona con carácter supletorio en las situaciones en las que los residentes de un edificio decidan no adoptar el régimen de propiedad horizontal, el cual es voluntario. J.A. Landrau Rivera y J.C Ortiz

---

[2]Diario de Sesiones (Cámara), Vol. X, pág. 1574 (1958). Posterior a ello, dicha pieza legislativa fue modificada en varias ocasiones con una última enmienda materializada por la Ley de Condominios.

Arocho, Régimen de Propiedad Horizontal: Retrospectiva y Actualización, 43 Rev. Der. P.R. 57, 61 (2004).

Más adelante la Ley de Propiedad Horizontal fue enmendada por la Ley Núm. 153-1995,[3] la Ley Núm. 43-1996,[4] y la Ley Núm. 157 de 4 de junio de 1976.[5] Las revisiones realizadas debilitaron los derechos de los titulares de los apartamentos al someterse a imposiciones acordadas por la mayoría. Ello trastocó la filosofía que enmarca este tipo de organización, la cual consiste en el pleno disfrute de la propiedad privativa. Landrau y Ortiz, *supra*, págs. 65-66.

Consciente de tal problemática, la Ley de Propiedad Horizontal nuevamente fue enmendada en el año 2003 con la aprobación de la Ley de Condominios. Ésta tuvo como

---

[3] La Ley Núm. 153-1995, enmendó la Ley de Propiedad Horizontal a los fines de agilizar los procedimientos y decisiones de los titulares para ampliar y mejorar sus condominios y reducir los costos y gastos que conlleva conseguir el consenso unánime de éstos.

[4] La Ley Núm. 43-1996 derogó la Ley Núm. 153 y enmendó la Ley de Propiedad Horizontal a los fines de establecer una herramienta para el cobro de las cuotas de mantenimiento adeudadas e imponer responsabilidades al adquiriente involuntario sobre éstas.

[5] Mediante la Ley Núm. 157 de 4 de junio de 1976 el legislador atendió los problemas que se suscitaron con relación a la morosidad en el pago de cuotas de mantenimiento, el control del inmueble por el constructor o por un grupo reducido de titulares, la administración de éste cuando no se han vendido todos los apartamentos, las limitaciones al foro judicial para dilucidar querellas entre los titulares, la situación con el régimen donde existen apartamentos de uso mixto: residenciales y comerciales, y la información a compradores potenciales. Sobre el planteamiento de estos problemas refiérase a F. Hernández Denton, Ley de Propiedad Horizontal un Análisis de las Enmiendas de 1976, 44 Rev. Col. Ab. P.R. 257 (1983).

objetivo ajustar el régimen de propiedad horizontal a uno

más eficiente y hacer factible el derecho a la propiedad

individual sobre un apartamento dentro de un edificio,

salvaguardando el fin de aprovechar al máximo posible

nuestra extensión territorial. En este sentido, el

legislador expresó lo siguiente:

> Las características fundamentales del Régimen de Propiedad Horizontal en Puerto Rico son: (1) el disfrute del apartamento como núcleo del régimen y de ahí la preservación del requisito de consentimiento unánime para toda obra o acción que afecte directamente su disfrute; (2) el carácter privilegiado de este esquema urbanístico en tanto atiende el fin social de propiciar la disponibilidad de viviendas en un área restringida de terreno; (3) el principio de que sea el Consejo de Titulares- y no una Junta de Directores- el órgano donde resida el control último de las decisiones sobre la administración del inmueble; (4) el reconocimiento de la personalidad jurídica propia de dicho Consejo de Titulares; (5) el carácter catastral de este régimen voluntario; (6) la necesidad de legislación especial para atender la naturaleza singularísima de los problemas que surgen en la horizontalidad; y, finalmente, (7) la disponibilidad de un foro especializado para atender con agilidad los conflictos que puedan surgir entre los diversos integrantes del régimen son postulados de nuestro régimen de propiedad horizontal que lo definen y que deben preservarse y fortalecerse. Véase, Exposición de Motivos de la Ley de Condominios.

De tal grado es la relevancia de velar por la demanda

de vivienda y propender el uso de la propiedad horizontal

para la asequibilidad de la propiedad individual que el

legislador expresamente dispuso que la Ley de Condominios

aplicaría a todo inmueble adscrito al régimen de propiedad

horizontal independientemente de cuándo fue sometido al

mismo. Art. 44 de la Ley de Condominios, 31 L.P.R.A. sec.

1291 n; Pereira Suárez v. Jta. Dir Cond., Op. de 30 de

junio de 2011, 2011 T.S.P.R. 102, 182 D.P.R.___; S.L.G. Vázquez, Ibáñez v. De Jesús, Vélez, Op. de 14 de diciembre de 2010, 2010 T.S.P.R. 227, 180 D.P.R. __; Consejo Titulares v. Williams Hospitality, 168 D.P.R. 101, 109-110 (2006); Asoc. De Condómines v. Naveira, 106 D.P.R. 88, 91 (1977); M.J. Godreau, El Condominio: El Régimen de Propiedad Horizontal en Puerto Rico, San Juan, Editorial Dictum, 1992, pág. 19.

Con el beneficio de la discusión intimada, enfoquemos nuestra atención en la naturaleza del régimen, los elementos que lo componen y la figura del Consejo de Titulares.

El régimen de propiedad horizontal es una institución jurídica de perfiles propios y características conceptuales esenciales que establecen un dominio exclusivo de un bien inmueble, el cual coexiste con un condominio forzoso e inseparable de los elementos comunes. Arce v. Caribbean Home Const. Corp., supra, pág. 236.

La propiedad horizontal es una figura sui generis matizada por un interés jurídico de mantenerla y potenciar su desarrollo. Esto, contrario a la copropiedad o comunidad, la cual como regla general surge en casos en los que concurren múltiples titulares sobre un mismo bien por razón de hechos fortuitos o involuntarios, por lo que se promueve la desaparición de dicho régimen.[6] M. J. Godreau, op. cit., págs. 21-23; O. Gómez Gil, La Propiedad

_____

[6] A modo de ejemplo, el caso de los coherederos.

<u>Horizontal en Cuba</u>, Editorial Lex, La Habana, 1954, págs. 50-54.

El sistema de horizontalidad constituye un acto voluntario sobre el cual existe comunidad sólo con referencia a los elementos comunes, los cuales componen factores indispensables para el debido disfrute y viabilidad de la propiedad individualizada. Por tanto, resulta distinguible de la típica comunidad. Dichos elementos comunes pertenecen a todos los titulares, no son de alguien en particular, y permanecen en indivisión forzosa sin que puedan ser objeto de la acción de división de la comunidad. Art. 13 de la Ley de Condominios, 31 L.P.R.A. sec. 1291k. Claro está, su destino y uso estará sujeto a los cambios que por unanimidad acuerden sus dueños. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291.

La escritura que constituye el orden de propiedad horizontal es de tal relevancia que este Tribunal consistentemente ha señalado que una vez inscrita en el Registro de la Propiedad, ésta es un estatuto privado que gobierna a los condóminos o titulares y obliga a terceros. <u>Consejo de Titulares v. Vargas</u>, 101 D.P.R. 579, 582 (1973). A estos efectos, hemos expresado que la escritura matriz es una especie de acuerdo "privado -al cual se *adhieren* los titulares cuando compran sus respectivos apartamentos- que *gobierna* a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones

violen la ley, la moral o el orden público. 31 L.P.R.A. sec. 3372; Consejo de Titulares v. Vargas, 101 D.P.R. 579, 582 (1973)."(Énfasis en el original.); Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225, 232 (2001) citando a Consejo Tit. Cond. McKinley Court v. Rullán, 126 D.P.R. 387, 394 (1990). La escritura matriz forma un estado de derecho a ser aceptado por los sucesivos titulares a medida que éstos adquieran sus apartamentos en el régimen. Arce v. Caribbean Home Const. Corp., *supra*, pág. 245. Ésta constituye la "fuente vinculante para los condóminos, luego de la Ley". M. J. Godreau, op. cit., pág. 71.

De otra parte, trasciende que una de las características del régimen de propiedad horizontal es que su naturaleza es de carácter voluntario, constitutivo vía la inscripción y catastral. Véanse, Arts. 22 al 33 de la Ley de Condominios, 31 L.P.R.A. secs. 1292-1292k. La propiedad horizontal está rigurosamente supeditada al requisito de inscripción registral. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291; García Larrinua v. Lichtig, 118 D.P.R. 120, 128 (1986). A tenor con ello, la Ley de Condominios requiere que la escritura pública sea inscrita en el Registro de la Propiedad y describa cada apartamento y número con expresión de sus medidas, situación, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique, y demás datos necesarios para su identificación. Deberá, a su vez, constar la superficie de la totalidad de los apartamentos y de acuerdo con éstas se fijará el

porcentaje de los gastos, ganancias y derechos en los elementos comunes. Véanse, Arts. 2, 22, 23 y 24 de la Ley de Condominios, 31 L.P.R.A. 1291, 1292, 1292a y 1292b.[7] La descripción de los apartamentos constituye una finca aparte de la matriz. Art. 25 de la Ley de Condominios, 31 L.P.R.A. sec. 1292c.

De igual forma, la escritura pública debe detallar los elementos comunes generales del inmueble y los elementos comunes limitados que existan a cierto número de apartamentos identificándolos. Igualmente, la Ley de Condominios requiere que se indique claramente el destino de los elementos que lo configuran. Una vez fijado el destino y uso en la escritura matriz sólo podrá ser variado mediante el consentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, *supra*. Conjuntamente con la escritura matriz se certifica que los planos sometidos al Registro de la Propiedad son copia fiel y exacta de los aprobados. Art. 22 de la Ley de Condominios, *supra*.

Lo anterior resulta de suma importancia porque de acuerdo con ello la Ley de Condominios establece un requisito de inscripción constitutiva para someter el inmueble al sistema de propiedad horizontal con

---

[7]Originalmente, al aprobarse la Ley de Propiedad Horizontal el porcentaje de contribución era fijado a base de lo que representaba el valor del apartamento dentro del conjunto del inmueble. Ello se calculaba tomando como base lo que valía el apartamento en comparación con el valor del inmueble en total. Véase, Art. 8 de la Ley de Propiedad Horizontal.

características catastrales que, contrario a la norma general, convierten al Registro de la Propiedad en un garantizador de la cabida. Lo antes expuesto conlleva que la realidad extraregistral tiene que corresponder a la que surge del Registro de la Propiedad.

La escritura matriz y los planos adheridos a ésta en un régimen de horizontalidad permiten a un comprador o titular conocer la totalidad del edificio y su apartamento para fines de hacer valer su derecho. Arce v. Caribbean Home Const. Corp., *supra*, págs. 257-258; Soc. de Gananciales v. Srio. de Justicia, 137 D.P.R. 70, 77 (1994); García Larrinua v. Lichtig, *supra*, pág. 133; M. J. Godreau, op. cit., pág. 20. Así, este Tribunal, no vaciló en establecer que:

> No puede fomentarse, como cuestión de política pública, la indiscriminada y no autorizada alteración de los apartamentos que componen un edificio sujeto a dicho régimen. Dichas alteraciones pueden poner en riesgo no sólo la vida y seguridad de los dueños de esos apartamentos, sino que la de los otros condóminos. Debe mantenerse presente que la alteración de un apartamento no sólo puede afectar la estética del edificio, sino que la solidez estructural del mismo. Posiblemente esta sea una de las situaciones donde más claramente es de aplicación el principio a los efectos de que los derechos de una persona terminan donde comienzan los derechos de otra. García Larrinua v. Lichtig, *supra*, pág. 135.[8]

_____

[8]Véase, además, voto concurrente emitido por el entonces Juez Asociado y actual Juez Presidente, señor Hernández Denton sobre su preocupación a que se violen las más elementales normas de convivencia en un edificio sujeto al régimen de propiedad horizontal ya que la Ley de Condominios requiere que la segregación o agrupación de apartamentos bajo dicho régimen deben constar consignadas en escritura pública, obtenerse el consentimiento de los titulares afectados y la aprobación del Consejo de Titulares. Véase, además, 31 L.P.R.A. sec. 1292j-1.

Establecido lo anterior, al adquiriente o titular de una finca adscrita al régimen de la Ley de Condominios se le garantiza la cabida que surja del Registro de la Propiedad, pero no necesariamente su titularidad con relación a su apartamento. M. J. Godreau, op. cit., pág. 20. Lo anterior resulta cónsono con el Art. 4 de la Ley de Condominios, 31 L.P.R.A. sec. 1291b, que destaca que una vez incorporada una propiedad al régimen y constituida en una finca independiente los apartamentos que lo componen pueden transmitirse individualmente, gravarse, ser objeto de dominio o posesión, y de toda clase de actos jurídicos intervivos o mortis causa, con libertad total del resto del inmueble y pueden inscribirse en el Registro de la Propiedad.

Por otra parte, para el disfrute de los bienes privativos que componen la propiedad horizontal resultan indispensables los elementos comunes. Éstos se encuentran delimitados en la escritura matriz y en el plano presentado ante el Registro de la Propiedad y sobre los cuales a los integrantes del mismo se les reconoce un derecho de uso y disfrute por el cual aportan al mantenimiento de éstos conforme a un porcentaje. Ésta peculiaridad nos presenta unas preocupaciones particulares al considerar si procede o no la usucapión o prescripción adquisitiva en el ordenamiento de propiedad horizontal que debemos atender.

No existe controversia sobre el hecho de que los elementos comunes dentro del régimen de propiedad

horizontal son todos aquellos que sean necesarios para la existencia, seguridad y conservación del edificio, y que están destinados al uso y disfrute de todos los propietarios conforme a su destino, sin impedir o estorbar el legítimo derecho de los demás. Art. 14 de la Ley de Condominios, 31 L.P.R.A. sec. 1291l. Véase, además, Consejo Tit. Cond. McKinley Court v. Rullán, *supra*, pág. 393. Como expresamos, éstos están totalmente definidos en la escritura matriz y en los planos sometidos al Registro de la Propiedad.

Los elementos comunes se clasifican en necesarios y elementos comunes voluntarios. La razón para ello estriba en que no todas las partes de uso común tienen el mismo valor o importancia en el papel que desempeñan. La distinción consiste en que los elementos comunes necesarios son indispensables para el disfrute de la propiedad privada de los apartamentos. Dicho carácter fue reconocido por el legislador en la Ley de Condominios al expresar que éstos no son susceptibles de propiedad individual por los titulares y están sujetos a un régimen de indivisión forzosa, es decir, no pueden ser objeto de propiedad particular por uno de los titulares pretendiendo excluir a los demás, pues ello resultaría incompatible con el buen funcionamiento del condominio. Art. 11 de la Ley de Condominios, 31 L.P.R.A. sec. 1291i(a). Brown III v. J.D. Cond. Playa Grande, *supra*, pág. 233; Pellón v. O'Clare, 98 D.P.R. 692, 695 (1970). El inciso (a) del Art. 11 de la Ley de Condominios claramente dispone que

"cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares **será nulo**." (Énfasis nuestro.) 31 L.P.R.A. sec. 1291i(a).

En cambio, los elementos comunes voluntarios pueden quedar sometidos a lo que dispongan **todos** los integrantes del régimen. Brown III v. J.D. Cond. Playa Grande, *supra*, pág. 237; Arce v. Caribbean Const. Corp., *supra*, págs. 237-238. Siendo ello así, se permite la transformación de un elemento común en privado con el consentimiento unánime de los titulares. Véase, Informe Conjunto de las Comisiones de Vivienda; de Banca y Asuntos del Consumidor, y de lo Jurídico sobre el P. del S. 1425 de 12 de noviembre de 2002, 14ta Asamblea Legislativa, 4ta Sesión Ordinaria; M. J. Godreau, La Privatización de los Elementos Comunes en los Condominios: Reflexiones en Torno a Posibles Enmiendas a la Ley de Propiedad Horizontal, 66 Rev. Jur. U.P.R. 149, 172-173 (1996).

Los elementos comunes pueden ser generales y limitados. Conforme dispone el Art. 12 de la Ley de Condominios, los elementos comunes limitados se destinan a cierto número de apartamentos con exclusión de los demás, tales como pasillos, escaleras, servicios sanitarios comunes a los apartamentos de un mismo piso y otros análogos. 31 L.P.R.A. sec. 1291j. Por tal razón, el Art. 13 de la Ley de Condominios establece que el mantenimiento de éstos corresponde a los titulares de los apartamentos a los que fueron destinados. 31 L.P.R.A. sec. 1291k.

Además de las fincas privativas y los elementos comunes, en el año 2003 la Ley de Condominios incorporó en su Art. 11-A, 31 L.P.R.A. sec. 1291i-1, el llamado elemento procomunal. El Art. 11-A, *supra*, define el elemento procomunal como "aquel susceptible de aprovechamiento independiente, sean apartamientos, estacionamientos o locales, cuya titularidad le haya sido **asignada** al Consejo de Titulares". Además, establece que también son elementos procomunales "las unidades privadas que adquiere el Consejo de Titulares mediante cesión, ejecución en cobro de deudas o por cualquier otro medio legítimo".

La procomunalidad la define Vázquez Bote como "la titularidad proindiviso que tienen los titulares en la horizontalidad sobre un piso o apartamento". E. Vázquez Bote, *supra*, pág. 330. Así estamos ante un área que, no es elemento común, sino que pertenece proindiviso a los titulares del régimen.

Del historial legislativo de la Ley de Condominios surge que el elemento procomunal se agregó a los fines de facilitar el manejo de apartamentos y áreas susceptibles de aprovechamiento privado. Específicamente se pretendió atender el problema que causaba la ejecución o enajenación de apartamentos en cobro de deudas de mantenimiento. Es por ello que el legislador atendió la "enajenación de los elementos procomunales" a través del Art. 11-A de la Ley de Condominios, *supra*, al reconocer al Consejo de Titulares la facultad para adquirir propiedades y ser

titular de éstas en su función de administrar y mantener el régimen en beneficio de sus integrantes. A base del referido articulado, el Consejo de Titulares solamente posee titularidad de aquello que le haya sido asignado en la escritura matriz. De igual forma, la necesidad de ejecutar apartamentos en cobro de deudas de mantenimiento promulgó que el legislador reconociera al Consejo de Titulares la prerrogativa de adquirir dichas propiedades mediante cesión, ejecución en cobro de deudas o por cualquier otro medio legítimo. Véase, P. del S. 1425 de 12 de noviembre de 2002, *supra*.

El Consejo de Titulares es el órgano deliberativo y normativo, integrado por los condóminos y existe para la consecución del sistema de propiedad horizontal.[9] Su responsabilidad fundamental consiste en velar por el buen funcionamiento del condominio para lograr que se cumplan con las disposiciones de su ley especial, la escritura matriz, el reglamento y los acuerdos debidamente aprobados. M. J. Godreau, Personalidad Jurídica, Legitimación Activa y Propiedad Horizontal: Capacidad Legal de la Junta de Directores y del Presidente para Llevar Acciones a Nombre del Condominio, 64 Rev. Jur. U.P.R. 481 (1995).

Este Tribunal desde Arce v. Caribbean Home Const. Corp., *supra*, prestó atención a la figura del Consejo de

---

[9]En España existe lo que se conoce como la Comunidad de Titulares o la Comunidad de Propietarios sin que se les reconozca una personalidad jurídica. En Argentina se refiere al Consorcio de Propietarios.

Titulares.[10] En aquel entonces, este Tribunal indicó que el Consejo de Titulares está compuesto por todos los dueños de apartamentos individuales que constituyen el régimen de propiedad horizontal. A su vez, citando a Gómez Gil esta Curia estableció que compartía la tesis que considera al Consejo de Titulares como un "auténtico sujeto de derecho con personalidad plena **en el ámbito de sus finalidades"**. **(**Énfasis nuestro.) Íd, pág. 253. Como bien señala M.J. Godreau, op. cit., pág. 29, "estos pronunciamientos responden, a nuestro entender, a la finalidad de propiciar una mayor protección y solidez del Régimen de Propiedad Horizontal".

El reconocimiento que hizo este Tribunal al Consejo de Titulares como un ente con personalidad jurídica plena en el ámbito de sus finalidades distinguió nuestro régimen de otros ordenamientos como el español y de los que existen en muchas jurisdicciones norteamericanas. M. J. Godreau, *supra*, págs. 481-482. Además, caló en la Asamblea Legislativa a tal grado que al aprobar la Ley de Condominios el legislador armonizó ésta con nuestros pronunciamientos y reconoció personalidad jurídica al

---

[10] La Ley de Propiedad Horizontal vigente al emitir la decisión en Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978) no dotaba al Consejo de Titulares con personalidad jurídica. Para una discusión sobre el referido particular, refiérase a R. R. Alegría, La Personalidad Jurídica en la Propiedad Horizontal, 63 Rev. Jur. U.P.R. 875 (1996); M. J. Godreau, Personalidad Jurídica, Legitimación Activa y Propiedad Horizontal: Capacidad Legal de la Junta de Directores y del Presidente para Llevar Acciones a Nombre del Condominio, 64 Rev. Jur. U.P.R. 481 (1995).

Consejo de Titulares. Véase, Informe de la Comisión de Desarrollo Urbano y Vivienda sobre el P. del C. 1425 de 3 de marzo de 2003, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria.

Sin divagaciones podemos establecer que el Consejo de Titulares constituye el organismo rector y deliberativo del régimen de propiedad horizontal.[11] Instituye la autoridad suprema sobre la administración del inmueble para su conservación y viabilidad. Dicho organismo está constituido por todos los titulares. Art. 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b; Arce v. Caribbean Home Const. Corp., *supra*, pág. 252. Sus facultades y prerrogativas están claramente delimitadas en la Ley de Condominios y supeditados al voto de sus miembros. Es por ello que la Ley de Condominios estableció cómo se celebran las reuniones, qué constituiría el *quórum* para la toma de decisiones y los votos necesarios para las distintas acciones a seguir.

La finalidad de dicho ente jurídico consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros, o sea, el de los titulares frente a la comunidad y a terceros. Es en este sentido que la Ley de Condominios le reconoce personalidad jurídica al Consejo de Titulares a los fines de promover y facilitar la participación de

---

[11] Por disposición expresa, el Consejo de Titulares no puede asumir la forma corporativa o de sociedad. Art. 38 de la Ley de Condominios, 31 L.P.R.A. sec. 1293b.

sus integrantes en los asuntos de conservación, administración y representación del régimen. Al así hacerlo, el Art. 38 de la Ley de Condominios, *supra*, diáfanamente dispone que de las obligaciones del Consejo de Titulares responderán los titulares de forma subsidiaria y solamente con su apartamento.

La conceptualización de la personalidad jurídica del Consejo de Titulares respondió a la necesidad de que los integrantes de la propiedad horizontal contaran con un organismo dotado de la facultad necesaria para actuar en beneficio de éstos y en el contorno de propiciar el régimen sin que dichos miembros tuvieran la preocupación de que sus actuaciones les conllevara la imposición de responsabilidad frente a terceros.

El patrimonio del Consejo de Titulares es uno limitado por la Ley de Condominios. Éste consiste en los ingresos por concepto de las cuotas de mantenimiento, los recaudos por el arrendamiento de los elementos comunes, la propiedad que pueda adquirir con dichos fondos y aquella que se adquiera por ejecución en cobro de deudas de mantenimiento u otras garantías. M. J. Godreau, *supra*, pág. 483. No obstante, éstos son elementos siempre procomunales, es decir, a nombre de todos los titulares que componen la horizontalidad. Véase, Art. 11-A de la Ley de Condominios, *supra.*

De lo antes reseñado podemos colegir que el Consejo de Titulares tiene un deber de fiducia frente a sus integrantes y que su conducta debe responder al fin último

de la Ley de Condominios de "viabilizar la propiedad particular y privada del apartamiento". M.J. Godreau, *supra,* pág. 158. Hemos recalcado la importancia de la Ley de Condominios y la política pública enmarcada en ésta. Establecimos que este régimen es uno especial que no responde ni puede ser comparado con otras figuras jurídicas reconocidas en nuestro Derecho. Su característica principal está contemplada en la armonía del disfrute de la propiedad privativa y el aprovechamiento del uso y disfrute compartido de ciertos elementos comunes en posesión de todos sus integrantes. Las características de los elementos que componen el régimen son mutables ante el consentimiento unánime de todos los titulares.

Asimismo, destacamos que la horizontalidad está totalmente delimitada por la escritura pública inscrita en el Registro de la Propiedad que demarca y rige el uso y destino de los componentes del régimen. Igualmente, acentuamos que la escritura matriz obliga a todo adquiriente de un bien inmueble que forme parte de dicha propiedad horizontal, a la vez que reconocimos que su carácter responde a la necesidad de todos sus propietarios, por lo que no es inmutable ante la anuencia unánime de todos ellos. De igual forma, establecimos que la totalidad de los integrantes del régimen forman el Consejo de Titulares al cual se le reconoce una personalidad jurídica en la esfera de sus objetivos los

cuales están consignados en la ley especial. Dicho cuerpo está obligado a desempeñarse en beneficio de sus miembros.

**IV**

Con el marco normativo antes expuesto, nos corresponde contestar la interrogante de si puede darse la prescripción adquisitiva o usucapión en propiedad adscrita a la Ley de Condominios.

El tema de la prescripción adquisitiva en la propiedad horizontal no ha sido ajeno a los pronunciamientos de este Tribunal. A poco examinamos nuestra jurisprudencia, nos percatamos de que hemos adelantado la posibilidad de escudriñar si procede la usucapión dentro del régimen. A estos efectos, en Brown III v. J.D. Cond. Playa Grande, *supra*, se nos invitó a mantener un esquema aprobado para el uso de unos estacionamientos de visitantes contrario a lo dispuesto en la escritura matriz. Uno de los argumentos esbozados consistió en que procedía sostenerse el esquema en vista de que se mantuvo en vigor durante once (11) años. Los hechos planteaban que por voto mayoritario los titulares acordaron para unos estacionamientos de visitantes un uso distinto al designado en la escritura matriz. La controversia fue delimitada por este Tribunal a los efectos de si tal actuación constituyó un acto de administración o trasformó el uso y destino de un elemento común general a uno limitado. Este Tribunal no sostuvo el acuerdo al concluir que variaba lo dispuesto expresamente en el título constitutivo del condominio, como el uso y destino. Por ende, declinamos sostener el acuerdo al

concluir que el acto era nulo ya que requería el consentimiento unánime de los titulares. En su Opinión concurrente del entonces Juez Asociado señor Hernández Denton destacó correctamente que las disposiciones de la ley especial limitan el uso de un inmueble a los fines expresados en su escritura y que cualquier cambio o alteración de éstos —sea en cuanto a su estructura física, naturaleza, titularidad o destino— requiere el consentimiento unánime de los condóminos.

Más recientemente en Nissen Holland v. Genthaller, 172 D.P.R. 503 (2007), este Tribunal atendió una controversia con relación a si se podía usucapir unos estacionamientos que formaban parte de un régimen de horizontalidad. De nuestros pronunciamientos surge que no hemos descartado la posibilidad de la adquisición por usucapión dentro de la horizontalidad. En aquella ocasión, establecimos que no podía dirimirse por sentencia sumaria la naturaleza de los estacionamientos, por lo que existía controversia si constituían una servidumbre predial discontinua no sujeta a adquirirse por usucapión. Art. 475 del Código Civil, 31 L.P.R.A. sec. 1653. El fundamento consistió en que "la usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante usucapión. De no serlas, no podrá consumarse la usucapión sobre ellas, independientemente de que se cumpla con los demás requisitos dispuestos en la ley". Íd, pág. 516. En consecuencia, remitimos el caso al Tribunal de Primera Instancia para que dilucidara si el bien a ser adquirido era objeto de usucapión.

Como corolario de lo anterior, este Tribunal ha considerado la posibilidad de la usucapión en el régimen de propiedad horizontal, sin emitir un pronunciamiento definitivo al respecto y sin expresar hasta qué grado y cuándo puede ésta sostenerse. No obstante, hemos consistentemente resuelto que la variación del uso y destino del objeto del régimen de propiedad horizontal está supeditado al consentimiento unánime de todos los titulares y a la importancia de las delimitaciones contenidas en la escritura matriz que constituyó el mismo.

En virtud de lo anterior, concluimos que en algunas instancias la prescripción adquisitiva puede tener lugar dentro del régimen de propiedad horizontal. Procedemos a establecer en cuáles circunstancias procede la usucapión dentro del régimen. Veamos.

La ley especial conjuntamente con la escritura matriz y los planos presentados ante el Registro de la Propiedad delimitan las circunstancias en las cuales puede tener lugar la prescripción adquisitiva. Los integrantes de un régimen constituido de acuerdo con la Ley de Condominios están impedidos por la ley especial y la escritura matriz de usucapir los elementos comunes necesarios. Como examinamos, la propia Ley de Condominios dispone en su Art. 11, *supra*, que la titularidad, posesión o control de éstos por una persona distinta al Consejo de Titulares es nula. Por tanto, la Ley de Condominios impide la obtención por usucapión de los elementos comunes necesarios al claramente disponer que éstos no son sujetos de posesión.

Por ende, no habrá prescripción adquisitiva con relación a los elementos comunes necesarios.

En cuanto a los elementos comunes generales, establecimos que éstos están delimitados en la escritura matriz y en los planos. Asimismo, hemos reconocido que la Ley de Condominios requiere que el uso y destino de éstos se fije al constituir el referido sistema y que únicamente puede ser variado por el consentimiento unánime de todos los titulares. Ante tal realidad, hemos manifestado que la propiedad horizontal responde a un sistema catastral con relación a su constitución, la designación de áreas y las características de los elementos comunes. La ley especial y la escritura matriz obligan a los adquirientes de propiedades dentro del régimen, por lo que éstos se someten a lo establecido en éstas y al así hacerlo reconocen que todos tienen el derecho de uso y disfrute de los elementos comunes generales.

Es ineludible que los elementos comunes generales, por disposición expresa del Art. 11 de la Ley de Condominios, requieren que su adjudicación esté dispuesta en la escritura de constitución, además, para su conversión o transferencia luego de fundado el régimen se "requerirá el consentimiento unánime de los titulares" y la transferencia deberá "inscribirse en el Registro de la Propiedad". Ello restringe la figura de prescripción adquisitiva dentro de la horizontalidad en la medida que deniega la protección posesoria ante el interés de una garantía jurídica preferente: el propio régimen.

No puede proclamarse la titularidad privativa de un elemento común sin que ello conlleve un cambio en el destino y uso de éste el cual demanda el consentimiento unánime de todos sus dueños. Por ende, la adquisición del elemento común general siempre estará atada al destino y uso dispuesto en la escritura matriz, el cual exclusivamente puede ser alterado en respuesta a la unanimidad de todos los integrantes del sistema.[12] Por tanto, y en estricto sentido jurídico, tampoco puede hablarse de la usucapión con relación a los elementos comunes generales debido a que no puede variarse el uso a uno privativo sin el consenso unánime de todos los miembros del condominio.

Ahora bien, con relación a las unidades privativas que integran el conjunto, no albergamos duda de que éstas pueden ser objeto de prescripción adquisitiva por los titulares que conforman el régimen o algún tercero si cumplen todos los requisitos necesarios para ello. Así lo reconoce el Art. 4 de la Ley de Condominios, *supra*, al disponer que las fincas independientes pueden ser objeto de dominio y posesión y de toda clase de actos jurídicos

---

[12]Adviértase que con relación a los elementos comunes generales se establece el mantenimiento de éstos en proporción a una cuota establecida, lo que puede argumentarse como una interrupción civil de la usucapión por constituir un reconocimiento tácito del derecho de los demás titulares con relación al elemento común general. Véanse, Art. 1848 del Código Civil, 31 L.P.R.A. sec. 5269; G. B. Ventura, Algunos Aspectos de la Usucapión en la Propiedad Horizontal en: http://www.acaderc.org.ar/doctrina/articulos/algunos-aspectos-de-la-usucapion-en-la-propiedad (última visita 14 de septiembre de 2011).

con libertad total del resto del inmueble. Claro está, ello no podrá afectar el destino o naturaleza privativa del bien ya que, como hemos examinado, ello siempre estará subordinado al consentimiento unánime de todos los condóminos.

Resolvemos que la Ley de Condominios veta la adquisición por usucapión de los elementos comunes, sean necesarios o generales, pero avala la obtención por prescripción adquisitiva de los apartamentos o fincas privativas que configuran el régimen de propiedad horizontal.

**V**

Pasemos a dirimir si el Consejo de Titulares puede usucapir parte del apartamento de los esposos Bravman-González, inscrito como privativo en el Registro de la Propiedad.

En el caso ante nuestra consideración, los esposos Bravman-González adquirieron el apartamento 1-G del Condominio Palma Real adscrito a un régimen de propiedad horizontal desde el año 1968. La descripción registral del referido apartamento incluye un armario que el Consejo de Titulares ha utilizado por más de treinta (30) años para colocar contadores eléctricos que suplen energía a los apartamentos 1-H, 1-J, 1-K, 2-F, 2-G, 2-H, 2-I, 2-J y 2-K. Una vez los esposos Bravman-González se percataron de que parte de su armario era utilizado para los fines antes expuestos presentaron la correspondiente demanda y

reclamaron la titularidad de la porción ocupada por el Consejo de Titulares.

El Consejo de Titulares adujo que había adquirido el armario por prescripción adquisitiva, por lo que era dueño de dicha porción del apartamento 1-G. Luego, las partes intentaron estipular que el Consejo de Titulares entregaría la posesión de un área del armario del apartamento a los esposos Bravman-González y costearían la correspondiente segregación. Sin embargo, la estipulación no fue ratificada en asamblea convocada a tales fines.

Como corolario de lo anterior, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones concluyeron que el Consejo de Titulares cumplió con todos los requisitos de la prescripción adquisitiva extraordinaria y que ello no contraviene la Ley de Condominios, por lo que coligieron que el Consejo de Titulares adquirió el dominio del armario en disputa.

En desacuerdo con las actuaciones de los foros aludidos, los esposos Bravman-González acudieron ante este Tribunal. En síntesis, arguyeron que el Consejo de Titulares no pudo haber usucapido el armario en controversia ya que la Ley de Condominios no permite alterar el uso y destino dispuesto en una escritura matriz sin el consentimiento unánime de los titulares. Así, argumentaron que el Consejo de Titulares varió el destino del armario de privativo a comunal sin cumplir con los requisitos estatuidos para ello.

Como hemos discutido, el uso y destino de los bienes que conforman la propiedad horizontal están claramente definidos en la escritura matriz y constan delimitados en los planos que se presenta con ésta. La Ley de Condominios claramente exige, y este Tribunal reiteradamente ha manifestado, que la modificación o cambio en el uso o destino establecido en la escritura matriz exige el consentimiento unánime de los titulares. Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291. Además, hemos resuelto que debido a la naturaleza del régimen de propiedad horizontal el Registro de la Propiedad es garantizador de la cabida física dentro de dicho régimen. Soc. de Gananciales v. Srio. de Justicia, *supra*; García Larrinua v. Lichtig, *supra*. De otra parte, la Ley de Condominios dispone que la segregación o división de apartamentos para el aprovechamiento independiente que sean permitidos por la escritura matriz se requiere el consentimiento de los titulares afectados y la aprobación por la mayoría del Consejo de Titulares. Art. 32-A de la Ley de Condominios, 31 L.P.R.A. sec. 1292j-1; Véase, opinión concurrente del entonces Juez Asociado señor Hernández Denton en Brown III v. J.D. Cond. Playa Grande, *supra.*

Como vimos, la usucapión dentro del régimen de propiedad horizontal puede darse contra los elementos privativos que lo componen ya que sólo éstos son susceptibles de adquisición por el transcurso del tiempo. Ahora bien, el Consejo de Titulares tiene como deber

primordial orientar sus acciones para proteger el propósito del régimen de propiedad horizontal: el disfrute de la propiedad privada sobre el apartamento.[13]  A tenor con dicho fin primordial, en el año 1978 en Arce v. Caribbean Home Const. Corp., *supra*, este Tribunal le reconoció al Consejo de Titulares personalidad jurídica en el ámbito de sus finalidades. A tono con dicha interpretación, el legislador finalmente suplió al Consejo de Titulares con personalidad jurídica en el año 2003 al aprobar la Ley de Condominios. Como examinamos, dicho organismo está compuesto por todos los miembros adscritos a la horizontalidad, por lo que existe una relación de fiducia en cuanto a sus acciones en beneficio del régimen de propiedad horizontal. Asimismo, sus actuaciones responden a la voluntad de sus miembros y éste opera en representación y armonía con los intereses de sus integrantes. Véase, M. J. Godreau, op. cit., pág. 37.

Reconocer al Consejo de Titulares la potestad de adquirir por prescripción adquisitiva parte de los bienes privativos dentro del régimen de propiedad horizontal, que le corresponde proteger, atenta contra la naturaleza misma de dicho ente y trastoca los cimientos de la Ley de Condominios. Un examen de la Ley de Condominios refleja claramente que la personalidad jurídica del Consejo de Titulares está ceñida a la administración y mantenimiento del régimen y a los acuerdos adoptados en las asambleas

---

[13]Véase, Art. 1A de la Ley de Condominios, *supra*.

debidamente convocadas y constituidas. Art. 38 de la Ley de Condominios, *supra.* Es por ello, como vimos, que el patrimonio del Consejo de Titulares es uno procomunal. Dicho ente no posee bienes propios que no sean los reconocidos por la Ley de Condominios, tales como los que le son expresamente asignados, los ingresos por concepto de cuotas de mantenimiento, los ingresos por el arrendamiento de los elementos comunes susceptibles de aprovechamiento por toda la comunidad y la propiedad que pueda adquirir el Consejo con dichos ingresos u otros fondos legítimamente obtenidos. Véase, Art. 11-A de la Ley de Condominios, *supra*; M. J. Godreau, op. cit., pág. 39.

Adjudicar parte del bien inmueble a favor del Consejo de Titulares propende a la desconfianza de dicho ente *sui generis* con relación al carácter representativo delegado en dicho organismo. No toda posesión merece protección legal. La problemática de reubicar o llegar a un acuerdo para la ubicación de los contadores eléctricos no es justificación para conceder una protección posesoria al Consejo de Titulares en claro detrimento de la Ley de Condominios. Tal actuación repercute nocivamente en los cimientos de nuestro régimen de propiedad horizontal al avalar el cambio en la escritura matriz de la cabida, el uso y el destino de parte de un bien privativo sin el consentimiento unánime de los titulares. Además, tolera la segregación de parte de un bien privativo sin el consentimiento del titular afectado conforme requiere el Art. 32-A de la Ley de Condominios, *supra*, y deniega a los

esposos Bravman-González la cabida física que les garantizó las constancias del Registro de la Propiedad. García Larrinua v. Lichtig, *supra*. Peor aún, reconoce al Consejo de Titulares una capacidad que no posee de adquirir un bien en carácter representativo de sus bienes cuando ello no es permitido en la prescripción adquisitiva. Véanse, Sánchez González v. Registrador, *supra*, pág. 375; Dávila v. Córdova, *supra*, pág. 141. Todo lo anterior es en diáfana contravención a la Ley de Condominios.

Como corolario de lo antes expuesto, el Consejo de Titulares nunca adquirió el área del armario ubicado en el apartamento de los esposos Bravman-González.

**VI**

Por los fundamentos antes expresados, se revoca la sentencia emitida por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sol Bravman, Carmen González
Hernández

    Peticionarios

      v.                     CC-2010-0275      Certiorari

Consejo de Titulares del
Condominio Palma Real

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 14 de diciembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión Concurrente y Disidente. El Juez Presidente señor Hernández Denton emitió Opinión Disidente a la cual se unió la Jueza Asociada señora Pabón Charneco.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Sol Bravman, Carmen González Hernández  Peticionarios  v.  Consejo de Titulares del Condominio Palma Real  Recurrido | CC-2010-0275 |
|---|---|

Opinión concurrente y disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 14 de diciembre de 2011

En esta ocasión nos enfrentamos a dos controversias que afectan directamente el régimen de propiedad horizontal en Puerto Rico. La primera nos invita a examinar la naturaleza catastral del régimen *vis à vis* a la figura de la prescripción adquisitiva o usucapión. La segunda nos lleva a evaluar la función que ejerce el consejo de titulares en los condominios. En síntesis, nos enfrentamos a una valorización de figuras jurídicas encontradas, ante las que debemos decidir cuáles merecen mayor consideración.

Por entender que la Opinión Mayoritaria concluye acertadamente en cuanto a la primera controversia, concurrimos. Sin embargo, discrepamos en cuanto a la limitación que se le atribuye al consejo de titulares a los efectos de usucapir una unidad dentro del condominio.

# I.

Los hechos de este caso no están en controversia.[2] Por estar de acuerdo con la narración de los hechos presentada en la Opinión Mayoritaria, suscribimos el primer acápite de dicha Opinión. A pesar de esto, deseamos hacer hincapié en que lo que el Consejo de Titulares del Condominio Palma Real intenta adquirir por usucapión no es la totalidad de una unidad privada dentro del condominio, sino un segmento de ésta que no aparece segregado en la escritura matriz. En dicha escritura aún consta que el apartamiento en cuestión posee una cabida física que incluye el clóset que se pretende usucapir. Nos corresponde entonces examinar primero si es posible dentro del régimen de propiedad horizontal la usucapión de un segmento de un apartamiento.

# II.

## A.

Antes de entrar en los méritos del caso, es necesario señalar que la controversia de este caso gira en torno al acto de usucapir una parte de un apartamiento privado que se segregó *de facto* sin enmendar la instancia registral en correlación a la realidad extrarregistral del condominio. En los hechos que dan pie a este caso no está en controversia la prescripción adquisitiva sobre los elementos comunes del condominio, por lo que vemos innecesaria la discusión a esos efectos que se detalla en la Opinión Mayoritaria.

La función revisora de los tribunales se limita a resolver las controversias genuinas entre partes opuestas

con un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. *PNP v. Calderón González*, 170 DPR 268 (2007); *ELA v. Aguayo*, 80 DPR 552 (1958). En nuestra jurisdicción es conocido que la doctrina de opinión consultiva intenta evitar que se produzcan decisiones en el vacío, en el abstracto o bajo hipótesis de índole especulativa, ya que no es función de los tribunales actuar como asesores o consejeros. *Ortiz Rivera v. Panel sobre el FEI*, 155 DPR 219, 251-52 (2001). Sin embargo, debe distinguirse entre la doctrina de opinión consultiva y el concepto de *obiter dictum*. *Id.* en la pág. 251. Este último:

> [P]resupone . . . que el tribunal ponente tiene ante sí un caso real y una controversia justiciable; un *obiter dictum* sólo implica que, al resolver, el tribunal incurre en pronunciamientos innecesarios sobre otros asuntos que no están en controversia o que no le han sido propiamente planteados en el caso. A diferencia de una opinión consultiva, el *obiter dictum* emitido por un tribunal simplemente se debe tener por no puesto, ya que no constituye parte necesaria del fallo, sino que muchas veces son meras expresiones judiciales excesivas e innecesarias.

*Id.* en las págs. 252-53 (énfasis omitido).

En el caso de autos el Tribunal tiene ante sí una controversia justiciable. Ahora bien, la exposición de la Opinión Mayoritaria en la que se hace un inventario de los bienes dentro del régimen de propiedad horizontal que son adquiribles vía prescripción y los que no, es innecesaria, se produce en el vacío y excede los límites de la controversia principal a la que este Tribunal viene llamado a resolver. Si bien es cierto que la discusión elaborada

por la Opinión Mayoritaria es atractiva para el desarrollo intelectual y jurídico de nuestra

jurisdicción, igual de cierto es que la función de esta Curia no es asesorar especulativamente, sino resolver controversias genuinas que le hayan sido planteadas.

En fin, discrepo de la Opinión Mayoritaria en tanto no limita su discusión a la controversia de usucapir una unidad privada dentro del condominio, sino que elabora sobre otras instancias en que es o no permitida la usucapión dentro del régimen.

**B.**

El Código Civil de Puerto Rico faculta que el dominio y demás derechos reales se adquieran por prescripción. Cód. Civ. PR. art. 1830, 31 LPRA § 5241. Claro está, no todo es adquirible vía la prescripción, sino aquello que sea susceptible de ello. Cód. Civ. PR. art. 1836, 31 LPRA § 5247. Nuestro ordenamiento exige que tanto para la prescripción adquisitiva ordinaria como la extraordinaria converjan cuatro requisitos con relación a la posesión: que sea en concepto de dueño, pública, pacífica e ininterrumpidamente. Cód. Civ. PR. art. 1841, 31 LPRA § 5262. Referente al caso de autos, las partes estipularon que el consejo de titulares lleva varios años en posesión del clóset en cuestión y que el dueño original del apartamento 1-G nunca tuvo acceso a dicho clóset. Así, el Tribunal de Primera Instancia, confirmado por el Tribunal de Apelaciones, sentenció que el consejo de titulares

cumplió con los requisitos para consumar la usucapión extraordinaria.[14]

A priori, tal conclusión aparenta validez, puesto que se satisfacen las exigencias de la prescripción adquisitiva extraordinaria. No obstante, las figuras jurídicas no deben evaluarse en el vacío ni mucho menos en abstracción del resto del ordenamiento jurídico. Véase, e.g., Liana Fiol Matta, En el vacío no hay Derecho: lecciones del juez Raúl Serrano Geyls desde el Tribunal Supremo, 80 REV. JUR. UPR 899 (2011). Por ello es menester examinar el contexto sobre el que se aplica una figura. En este caso debemos valorar la utilización de la prescripción adquisitiva dentro de otro marco jurídico denominado propiedad horizontal.

La Ley de Condominios exige que al someter un inmueble al régimen de propiedad horizontal se presente para inscripción una escritura matriz con la descripción de la cabida de cada apartamento, así como los planos del inmueble. 31 LPRA §§ 1291, 1292, 1292b. En ocasión de esas exigencias, este Tribunal estableció que el régimen de propiedad horizontal en Puerto Rico es de naturaleza catastral. García Larrinua v. Lichtig, 118 DPR 120 (1986); Arce v. Caribbean Home Construction, 108 DPR 225 (1978). Así, en García Larrinua, mencionamos:

> De las disposiciones antes descritas surge con meridiana claridad que nos encontramos no sólo ante la llamada "inscripción constitutiva" sino que, en

---

[14] Sentencia del Tribunal de Primera Instancia, Apéndice en la pág. 91. Véase también Sentencia del Tribunal de Apelaciones, Apéndice en la pág. 111.

relación con la Ley de Propiedad Horizontal . . el Registro de la Propiedad tiene las características de un sistema catastral.

. . . .

Lo anteriormente expresado es la razón por la cual en el caso de la Ley de Propiedad Horizontal no es de aplicación la norma general de que el Registro de la Propiedad no es garantizador de cabida. Esto es, de ordinario, el Registro no da fe de las características físicas de los inmuebles.

Teniendo el Registro en cuanto a dicha ley las características de un catastro, la realidad extrarregistral tiene que corresponder con la que surge del Registro. Es por ello que al comprador de un apartamento de un edificio que está sometido al régimen de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no sólo de las constancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las "circunstancias particulares", tales como cabida o superficie total, del apartamento individual de que se trate.

*García Larrinua*, 118 DPR en las págs. 131-33 (citas omitidas).

El profesor Luis Muñiz Argüelles sostiene que "la ley lo que señala es que el régimen y sus características dependen de la inscripción, no así la titularidad, que puede variar fuera del registro". Luis Muñiz Argüelles, Derechos Reales y Derecho Inmobiliario Registral, 77 Rev. Jur. UPR 629, 638 (2008). En ese sentido, "[l]a naturaleza catastral del régimen se refiere a la existencia del mismo, a la designación de áreas, a las características de los elementos comunes y a otros aspectos ajenos a la titularidad de cada unidad". *Id.* Véase también las expresiones del profesor Michel J. Godreau a los efectos de que en el sistema catastral que establece la Ley de

Condominios "las constancias del Registro de la Propiedad sobre un condominio, si bien no establecen el derecho respecto a la titularidad de cada apartamiento . . . sí constituyen la fuente inexpugnable sobre la configuración física de los apartamientos". MICHEL J. GODREAU, EL CONDOMINIO: EL RÉGIMEN DE PROPIEDAD HORIZONTAL EN PUERTO RICO 19-20 (1992).

La doctrina, pues, ha avalado que la naturaleza catastral del régimen de propiedad horizontal de Puerto Rico ahínca una protección a la configuración física y cabida de los apartamientos, mas no a la titularidad de éstos. En consecuencia, debemos concluir que cualquier acto que incida sobre la cabida y la configuración física de una unidad dentro de un condominio sin el debido procedimiento que preceptúa la Ley de Condominios, atenta contra la esencia misma del sistema catastral; esto, adviene en una negación de su existencia. Contrario sería la instancia en que un acto jurídico no incida sobre la cabida física de la unidad, sino sobre la **totalidad** del apartamiento, en cuyo caso el efecto del acto recaería sólo sobre la titularidad del bien. En tal circunstancia, no vemos impedimento de ejercer cualquier acto jurídico, incluso la prescripción adquisitiva. Así también lo faculta el Artículo 4 de la Ley de Condominios al preceptuar: "los apartamientos . . . podrán individualmente transmitirse y gravarse y ser objeto de dominio o posesión, y de toda clase de actos jurídicos". 31 LPRA § 1291b.

En el año 2003 se enmendó la Ley de Propiedad Horizontal de 1958. Entre los cambios insertados, se

destacan desde una enmienda al título de la ley hasta cambios que facilitan el disfrute de la propiedad individual. *Véase* MICHEL J. GODREAU, LA NUEVA LEY DE CONDOMINIOS. GUÍA BÁSICA PARA ENTENDER EL RÉGIMEN DE PROPIEDAD HORIZONTAL SEGÚN LA LEY 103 DEL 5 DE ABRIL DE 2003, 6 (2003). En la exposición de motivos de la nueva Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003, y cónsono con la jurisprudencia antes citada, la Asamblea Legislativa expuso que "[l]as características fundamentales del Régimen de Propiedad Horizontal en Puerto Rico son: (1) . . . (5) **el carácter catastral de este régimen voluntario;** . . . [S]on postulados de nuestro régimen de propiedad horizontal que lo definen y que deben preservarse y fortalecerse". Exposición de Motivos, Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003.

Vemos que la intención legislativa con la nueva Ley de Condominios fue afianzar el carácter catastral del régimen de propiedad horizontal. No obstante, la propia ley introduce un elemento laxativo al sistema catastral del régimen.[15] En el Artículo 15, 31 LPRA § 1291m, se introdujo

---

[15] Compárese la cualidad *sui generis* del sistema catastral del régimen de propiedad horizontal de Puerto Rico con otros sistemas registrales más rígidos, como el alemán o el australiano. *Véase* LUIS R. RIVERA RIVERA, DERECHO REGISTRAL INMOBILIARIO PUERTORRIQUEÑO 29-33 (2da ed. 2002) (En el sistema registral australiano hay "perfecta concordancia del Registro de la finca inmatriculada con la realidad física"); LINO RODRÍGUEZ OTERO, ELEMENTOS DE DERECHO HIPOTECARIO 35-40 (3ra ed. 2005); Luis Muñiz Argüelles, Derechos Reales y Derecho Inmobiliario Registral, 77 REV. JUR. UPR 629, 638 (2008) ("Es por ello que en el Derecho alemán no existe la usucapión de derechos sobre bienes inmuebles, a no ser que se trate de una usucapión a favor del titular inscrito, lo que confirma lo que dice el Registro").

el inciso "j" para atribuirle al adquirente cuyo transmitente no sea el desarrollador, el conocimiento o condición manifiesta de los elementos comunes al momento de adquirir. Empero, la condición manifiesta ("as is") no se aplicó a la adquisición de unidades individuales dentro del régimen de propiedad horizontal, sino sólo a los elementos comunes del inmueble. Del Informe de la Cámara de Representantes sobre el P. del S. 1425,[16] del 3 de marzo de 2003, se desprende que "la aceptación del condominio en las condiciones que se encuentra, se refiere a las condiciones manifiestas de los elementos comunes". *Id.* en la pág. 7. Por su parte, el Informe Conjunto del Senado sobre el P. del S. 1425, del 12 de noviembre de 2002, menciona:

> Esta medida es cónsona con el fin de preservar la convivencia que pueda existir en un condominio en el que se hubieren efectuado cambios a la fachada o al destino de ciertas áreas y éstos hubiesen sido aceptados tácitamente por los titulares. El hecho de que los cambios sean manifiestos impide que un adquirente de buena fe alegue el desconocimiento de los mismos y por ende su ilegalidad.

De lo anterior debemos colegir que si la Asamblea Legislativa evaluó y permitió el elemento de condición manifiesta ("as is") sobre los cambios de fachada, cabida y uso en cuanto a los elementos comunes, pero no sobre los apartamientos individuales, su intención fue que con relación a estos últimos se mantuviese inalterado el sistema catastral en tanto es garantizador de la cabida física de dichas unidades privadas. Así, en referencia a

---

[16] El P. del S. 1425 se convirtió posteriormente en la Ley de Condominios, Ley Núm. 103 de 5 de abril de 2003.

los apartamientos privados, se salvaguardó la premisa jurisprudencial de que la escritura matriz una vez inscrita en el Registro, es un estatuto privado que gobierna a los condóminos y obliga a terceros. *Consejo de Titulares v. Vargas*, 101 DPR 579, 582 (1973).

Al aplicar la discusión previa a los hechos del caso de autos, es forzoso concluir que si bien la prescripción adquisitiva sobre unidades privadas dentro del régimen de propiedad horizontal es compatible con el Artículo 4 de la Ley de Condominios, dicho acto jurídico no podrá efectuarse en contravención del sistema catastral del régimen que garantiza la configuración física de la unidad. No es un asunto de titularidad, sino de la instancia registral que garantiza la cabida física del apartamiento y que la Asamblea Legislativa optó por preservar.

La usucapión sólo puede recaer sobre cosas susceptibles de ser adquiridas mediante prescripción. De no serlas, no podrá consumarse la usucapión sobre ellas, independientemente de que se cumplan los demás requisitos dispuestos en la ley. *Nissen Holland v. Genthaller*, 172 DPR 503, 516 (2007). A pesar de que el consejo de titulares del Condominio Palma Real cumplió con los requisitos para usucapir una unidad privada dentro del régimen de propiedad horizontal, dicho acto jurídico no se consumió porque se efectuó sobre un clóset que registralmente aún forma parte de la cabida física de un apartamiento.

En consecuencia, concluimos que es posible usucapir la totalidad de un apartamiento dentro del régimen de propiedad horizontal, siempre que tal acto no incida sobre la cabida de la unidad y la naturaleza catastral del régimen. Como en la controversia de autos no se intentó usucapir la totalidad del apartamiento, sino una parte de éste, de consumarse tal acto jurídico contravendría las instancias registrales y el sistema catastral del régimen de propiedad horizontal.

### III.

La segunda controversia ante nuestra consideración plantea la interrogante de si el consejo de titulares de un condominio está facultado para usucapir una unidad privada dentro del régimen de propiedad horizontal. Una mayoría de este Tribunal rechaza que el consejo de titulares pueda ejercer tal acto jurídico. Como veremos, yerra la mayoría.

Por fíat judicial esta Curia invistió de personalidad jurídica al consejo de titulares de un condominio "en el ámbito de sus finalidades". *Arce v. Caribbean Home Construction*, 108 DPR 225, 253 (1978). Posteriormente, la Asamblea Legislativa incluyó dicha expresión jurisprudencial en el Artículo 38 de la Ley de Condominios de 5 de abril de 2003, 31 LPRA § 1293b. Como expone el profesor Michel J. Godreau:

> El efecto principal que tiene el investir de personalidad jurídica a una entidad es el de separar los patrimonios de los condóminos y, por ende, la responsabilidad patrimonial individual de éstos, del patrimonio y de la responsabilidad civil patrimonial del ente colectivo. Cuando hablamos de que una entidad tiene personalidad jurídica propia

nos referimos a que la entidad que la disfruta es un sujeto de derecho, y como tal, es portador de derechos y de obligaciones propias y distintas a las de otros sujetos de derecho.

Michel J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la junta de directores y del presidente para llevar acciones a nombre del condominio*, 64 Rev. Jur. UPR 481, 482 (1995).

A pesar de esto, la mera determinación de poseer personalidad jurídica no determina las facultades que posee el ente en cuestión. En el caso del consejo de titulares, que es una persona jurídica, hay que examinar los derechos y obligaciones otorgadas, ya que no cuentan con un "catálogo de derechos y de obligaciones –como ocurre con el ser humano–". *Id.* en la pág. 484. Para eso hay que ver lo que se le permite hacer al consejo de titulares; en otras palabras, cuáles son los derechos y obligaciones que tiene. En síntesis, el análisis no puede ser que como el consejo de titulares tiene personalidad jurídica *ipso facto* tiene derechos y obligaciones que le permitan usucapir o realizar otros actos jurídicos. El análisis debe superar tres interrogantes; a saber: (1) ¿el consejo de titulares tiene personalidad jurídica?, (2) ¿qué derechos y obligaciones le han sido facultados? y (3) ¿el acto que pretende efectuar ahora ese consejo de titulares está incluido dentro de los derechos y obligaciones facultados?

La primera interrogante de este examen ya la contestamos en la afirmativa. Para la segunda es necesario examinar el estatuto que crea la persona jurídica. En la controversia de autos el estatuto es la propia Ley de Condominios. El Artículo 38 de la Ley de Condominios

establece la lista de facultades provistas al consejo de titulares, pero en ella no hay expresión en torno a la capacidad de poseer una unidad privada dentro del régimen. 31 LPRA § 1293b.   En cambio, la nueva Ley de Condominios de 2003 introdujo dentro del Artículo 11-A el elemento procomunal, cuya titularidad se le adjudica al consejo de titulares.   Dicta el mencionado Artículo:

> Serán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamientos, estacionamientos o locales, cuya titularidad le haya sido asignada al Consejo de Titulares. **Lo serán también las unidades privadas que adquiera el Consejo de Titulares mediante cesión, ejecución en cobro de deudas o por cualquier otro medio legítimo.**

31 LPRA § 1291i-1 (énfasis suplido).

Como vemos, a diferencia del Artículo 38, en el Artículo 11-A sí se le faculta al consejo de titulares adquirir una unidad susceptible de aprovechamiento privado.   Cabe destacar que la Opinión Mayoritaria reconoce que el Artículo 11-A faculta al consejo de titulares la adquisición de propiedades y ser titular de éstas.   A pesar de ello, concluye contradictoriamente la mayoría de este Tribunal que el consejo de titulares no puede adquirir una propiedad por el medio legítimo de la usucapión.

A raíz de lo anterior debemos concluir que si la ley prescribe como una de las finalidades del consejo de titulares el poder tener patrimonio separado al de los titulares, además de poder adquirir una unidad privada mediante la ejecución en cobro de deudas o cualquier medio legítimo, entonces adquirir por la vía de la prescripción

adquisitiva es otro procedimiento más dentro de esas finalidades del consejo de titulares. En vista de este análisis, a la segunda interrogante debemos responder que el consejo de titulares tiene como parte de sus derechos y obligaciones la facultad para adquirir mediante cualquier medio legítimo un apartamiento privado dentro del condominio. Tal facultad proviene de las finalidades otorgadas al consejo de titulares y eso no contraviene las demás funciones de ese cuerpo.

La tercera interrogante del examen pautado se puede responder bajo la lógica de un silogismo, sin mayores consideraciones. Esto es, si dentro de los derechos y obligaciones del consejo de titulares se le faculta a adquirir una unidad privada mediante cualquier medio legítimo, y la usucapión es un medio legítimo dentro de nuestro sistema de derecho, entonces al consejo de titulares le está facultado a adquirir vía prescripción o usucapión. Esta conclusión tiene su fundamento en el propio Artículo 11-A de la Ley de Condominios.

Finalmente, es meritorio señalar que a pesar de que el consejo de titulares posee la facultad para usucapir una unidad susceptible de aprovechamiento privado dentro del régimen, tal acto jurídico no puede contravenir el sistema catastral al que está sujeto el régimen de propiedad horizontal de Puerto Rico, según señalamos anteriormente. Aplicado a los hechos del caso de autos, debido a que el acto de prescripción adquisitiva efectuado por el consejo de titulares incide sobre la cabida del apartamiento y las

constancias del Registro, dicha usucapión no se consumó. A tales efectos, procedería revocar la determinación del foro inferior.


                                        Anabelle Rodríguez Rodríguez
                                               Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sol Bravman, Carmen González
Hernández

    Peticionarios

      v.                          CC-2010-0275
    *Certiorari*

Consejo de Titulares del
Condominio Palma Real

    Recurridos

Opinión Disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON a la que se une la Jueza Asociada señora PABÓN CHARNECO.

San Juan, Puerto Rico, a 14 de diciembre de 2011.

Diferimos de la Opinión que emite una mayoría de este Tribunal en el presente caso, principalmente, porque al aplicarla a los hechos específicos de la controversia, desprotege a los titulares de un condominio cuyos servicios básicos pueden quedar secuestrados por un particular. Esto, pues no provee remedios inmediatos para finalizar este conflicto que lleva ocho años litigándose y no permite continuar una sana convivencia comunitaria. Por entender que no hay nada en la Ley 103 de 5 de abril de 2003, conocida como la Ley de Condominios, 31 L.P.R.A. sec. 1291 *et seq.* (Ley de Condominios), que impida que un Consejo de Titulares adquiera un

bien privativo mediante prescripción adquisitiva extraordinaria, confirmaríamos la decisión del Tribunal de Apelaciones que concluyó de igual manera y pondríamos punto final a este caso. Somos del criterio que, en virtud del Art. 11-A de la Ley de Condominios, *supra*, el Consejo de Titulares está facultado para adquirir, mediante cualquier medio legítimo, una unidad privativa sometida al régimen de horizontalidad como un elemento procomunal.

Al este Tribunal aclarar que la prescripción adquisitiva de un bien privativo dentro del régimen de propiedad horizontal es viable como medio de adquisición de propiedad privada, no hallamos preceptos en la Ley de Condominios que le impidan al Consejo de Titulares utilizar este medio de adquisición de dominio, sino todo lo contrario.

I.

En junio de 2003, el Sr. Sol Bravman y la Sra. Carmen González Hernández (esposos Bravman-González) presentaron ante el Tribunal de Primera Instancia una demanda contra Metropolitan Builders, Inc.[17] y la Junta de Directores del Condominio Palma Real. En esencia, alegaron que desde el 28 de junio de 2001 eran titulares del apartamento 1-G del Condominio Palma Real (Condominio), inmueble sometido al régimen de propiedad horizontal desde octubre de 1968, y que poco tiempo después de mudarse a ese apartamento se dieron cuenta que el armario del dormitorio principal había

---

[17] En el 2004, el Tribunal de Primera Instancia desestimó la causa de acción contra Metropolitan Builders, Inc.

sido segregado al haberse construido una pared que lo separó del dormitorio. De igual forma, adujeron que el Consejo de Titulares utiliza dicho armario para ubicar los contadores de electricidad, y tuberías de agua y desagüe del Condominio, aunque dicho espacio está inscrito como finca privativa tanto en la escritura matriz como en los planos del inmueble.

Asimismo, los esposos Bravman-González arguyeron que utilizar ese espacio privativo para fines comunales es una violación al Art. 2 de la Ley de Condominios, 31 L.P.R.A. sec. 1291, pues este claramente establece que el uso y destino de un área comprendida en un inmueble sometido al régimen de horizontalidad solo podrá ser variado mediante el consentimiento unánime de los condóminos. Por tal razón, le solicitaron a la Junta de Directores del Condominio la devolución del uso y posesión del armario en cuestión, mas esta no accedió a sus reclamos. Tras varios incidentes procesales, los esposos Bravman-González enmendaron su demanda a los efectos de sustituir la Junta de Directores del Condominio por el Consejo de Titulares.

Por su parte, el Consejo de Titulares, en su contestación a la demanda enmendada, negó la mayoría de las alegaciones y esbozó como defensa afirmativa, entre otras, que el área del armario en controversia la había adquirido por prescripción adquisitiva. Esto, pues arguyó que poseyó dicha área de forma pacífica, ininterrumpida y en concepto de dueño por más de treinta años y, por lo tanto, adquirió el dominio del bien mediante la usucapión extraordinaria.

Luego de varios trámites procesales y celebrado el correspondiente juicio, el Tribunal de Primera Instancia emitió una sentencia en la que desestimó la demanda presentada por los esposos Bravman-González. Entre los hechos que fueron estipulados por las partes y tomados como ciertos por el foro primario, se encuentra que el dueño original del apartamento 1-G del Condominio, FM Investment, Corp., nunca tuvo acceso al armario en controversia pero que, en abril de 1993, presentó una demanda ante el Tribunal de Primera Instancia en la cual alegó pérdidas por la utilización de ese espacio que, registralmente, era parte de su apartamento. No obstante lo anterior, dicha demanda fue desestimada por incumplimiento e inactividad de parte de FM Investment, Corp. mediante una sentencia al día de hoy final y firme.

Asimismo, como el foro primario razonó que la presentación de la referida demanda en 1993 no tuvo el efecto de interrumpir el término prescriptivo para adquirir la propiedad en cuestión mediante la usucapión, concluyó que el Consejo de Titulares había adquirido el armario por prescripción adquisitiva extraordinaria. Esto, pues había estado poseyendo dicha área por más de treinta años en concepto de dueño, pública, pacífica e ininterrumpidamente.

Inconformes con esta determinación, los esposos Bravman-González acudieron ante el Tribunal de Apelaciones en apelación. En síntesis, alegaron que el área en controversia no es susceptible de ser adquirida por prescripción adquisitiva a la luz del Art. 2 de la Ley de

Condominios, *supra*. De esta forma, adujeron que, el uso y destino de las fincas comprendidas en un inmueble sometido al régimen de propiedad horizontal solo pueden variarse con el consentimiento unánime de los condóminos.

Así expuesta la controversia, el Tribunal de Apelaciones confirmó la sentencia emitida por el foro primario. En esencia, concluyó que la Ley de Condominios, *supra*, guarda silencio sobre si el uso y destino de un área dentro de un inmueble sometido al régimen de propiedad horizontal puede ser variado mediante la prescripción adquisitiva, por lo que al no existir ninguna expresión a estos efectos, y al no haber conflicto entre la ley especial y las disposiciones pertinentes del Código Civil, se pueden aplicar estas últimas al caso de autos. Al así hacerlo, señaló que el Consejo de Titulares fue un poseedor de mala fe, pero que desde 1969 estuvo poseyendo el referido armario en concepto de dueño, de forma pública, pacífica e ininterrumpidamente, por lo que adquirió el dominio del bien por la usucapión extraordinaria.

Aun insatisfechos, los esposos Bravman-González acuden ante nos mediante recurso de *certiorari* y alegan, como resuelve la Opinión mayoritaria, que el Consejo de Titulares está legalmente impedido de variar el uso y destino de un área, cambiándola de privativa a comunal, sin el consentimiento de la totalidad de los condóminos al amparo del Art. 2 de la Ley de Condominios, *supra*.

II.

A.

### La prescripción adquisitiva o usucapión

El Art. 1830 del Código Civil de Puerto Rico preceptúa que "[p]or prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales. También se extinguen del propio modo por la prescripción los derechos y las acciones, de cualquier clase que sean". 31 L.P.R.A. sec. 5241. Como se desprende de lo anterior, existen dos clases de prescripción, a saber, la prescripción adquisitiva y la extintiva. Íd.; véanse, además: Silva Wiscovich v. Weber Dental Mfg. Co., 119 D.P.R. 550 (1987); Dávila v. Córdova, 77 D.P.R. 136 (1954).

Por la prescripción adquisitiva, o comúnmente denominada usucapión o prescripción del dominio, se adquieren el dominio y todos los derechos reales. De igual forma, la doctrina ha dividido la prescripción adquisitiva en dos modalidades, a saber, la ordinaria y la extraordinaria. E. Vázquez Bote, Derecho Privado Puertorriqueño, New Hampshire, Equity Publishing Company, 1991, T. VII, Vol. 1, págs. 375-376; Castán Tobeñas, op. cit., págs. 347-348. Asimismo, como expresa Puig Brutau sobre estas dos modalidades de prescripción, "[e]n la primera [la ordinaria] el plazo es más breve, pero a cambio de ello han de concurrir los requisitos de título y buena fe. En la segunda [la extraordinaria] no son necesarios

estos requisitos pero el plazo es más prolongado…". Puig Brutau, op. cit., pág. 360.

Ahora bien, la usucapión solo es viable como forma de adquirir la propiedad respecto a todas las cosas que están en el comercio de los seres humanos, como lo señala el Art. 1836 del Código Civil, 31 L.P.R.A. sec. 5247. Véase, además: Díez Picazo y Gullón, op. cit., pág. 146. Asimismo, la prescripción adquisitiva conlleva una serie de requisitos dependiendo de si es ordinaria o extraordinaria. Para que ocurra la prescripción adquisitiva ordinaria hay dos elementos adicionales que deben estar presentes siempre que se tenga la posesión dispuesta en la ley, de una cosa o derecho susceptible de apropiación, a saber, justo título y buena fe. Ramos v. Ríos, 78 D.P.R. 619 (1955); Díez Picazo y Gullón, op. cit., págs. 149-151; Puig Brutau, op. cit., págs. 363-366. Así, el Art. 1850 del Código Civil preceptúa que "[l]a buena fe del poseedor consiste en la creencia de que la persona de quien recibió la cosa era dueña de ella, y podría transmitir su dominio". 31 L.P.R.A. sec. 5271. De igual forma, el Art. 363 del Código Civil establece, inter alia, que "[s]e reputa poseedor de buena fe al que ignora que en su título o modo de adquirir exista vicio que lo invalide". 31 L.P.R.A. sec. 1424; véanse, además: M. J. Godreau Robles, Lealtad y buena fe contractual, 58 Rev. Jur. U.P.R. 367 (1989); D. Espín Cánovas, Derecho Civil Español, Madrid, Ed. Rev. Der. Priv., Tomo II, 1968, pág. 159.

Por otro lado, el Art. 1852 del Código Civil dispone que "[e]ntiéndese por justo título el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate". 31 L.P.R.A. sec. 5273. Como complemento a ello, tal como lo establece el Art. 1854 del mismo cuerpo normativo, el justo título debe probarse, pues este, que debe ser verdadero y válido, no se presume, contrario a la buena fe. 31 L.P.R.A. secs. 5274-5275; véanse, además: Castán Tobeñas, op. cit., págs. 353-355; D. Espín Cánovas, Función del justo título en la adquisición de derechos por usucapión, Ed. Rev. Der. Priv., Madrid, Editoriales de Derecho Reunidas, 1968, págs. 833 et seq.; M. Albaladejo, El título anulable en la usucapión, 34 Rev. Jur. U.P.R. 47 (1965).

Claro está, la posesión de una cosa o derecho real susceptible de apropiación sin justo título ni buena fe, por imperativo de ley, también puede ser un modo de adquirir la propiedad por el transcurso del tiempo, lo que se conoce como la usucapión o prescripción adquisitiva extraordinaria. Para que suceda, al igual que para que aplique la prescripción adquisitiva ordinaria, la cosa o derecho debe poseerse por un transcurso de tiempo con determinadas características. Ello, pues para que ocurra la usucapión tiene que haber existido la posesión de la cosa o derecho por un periodo de tiempo fijado en ley, pero recalcando que no toda posesión da pie a la prescripción adquisitiva. Véanse Sucn. Maldonado v. Sucn. Maldonado, 166

D.P.R. 154 (2005); Dávila v. Córdova, *supra*; Puig Brutau, op. cit., pág. 368.

Primeramente, es pertinente notar que el Art. 1842 del Código Civil establece expresamente que los actos de carácter posesorio llevados a cabo en virtud de licencia o por mera tolerancia del dueño de una cosa no se pueden aprovechar para cumplir con la posesión necesaria para la prescripción adquisitiva. 31 L.P.R.A. sec. 5263; véanse, además: Sucn. Maldonado v. Sucn. Maldonado, *supra*, pág. 183; Vélez Cordero v. Medina, 99 D.P.R. 113 (1970); Ortiz v. Dávila, 31 D.P.R. 220 (1922). Por el contrario, tanto el Art. 1841 como el 317 del Código Civil disponen que la posesión que se disfruta en concepto de dueño puede servir de título para adquirir el dominio. 31 L.P.R.A. secs. 5262 y 1462. Así, por ley, el acto posesorio, o posesión civil, para adquirir mediante usucapión una cosa mueble o inmueble o derecho real debe ser en concepto de dueño de la cosa o derecho objeto de la usucapión. Castán Tobeñas, op. cit., pág. 355; Puig Brutau, op. cit., pág. 368.

De la misma forma, el Código Civil exige que dicha posesión, para que sea aplicable la usucapión, debe ser, además, pública. 31 L.P.R.A. secs. 5262 y 1447. Así, pues "[l]os actos meramente tolerados y los ejecutados clandestinamente y sin conocimiento del poseedor de una cosa, o con violencia, no afectan la posesión". 31 L.P.R.A. sec. 1447. Por ello, como expresa Vélez Torres basándose en el criterio del tratadista Albaladejo:

> [E]s pública la posesión que no se tenga ocultamente, como ocurriría si quien la disfruta lo hace a escondidas. La publicidad persigue el propósito de no frustrar la posibilidad de que la posesión del usucapiente llegue a ser conocida por quien podría reclamar la cosa; si se posee en forma clandestina y secreta la cosa no podría ser reclamada por su legítimo dueño y faltaría el fundamento para presumir que este la ha abandonado. Vélez Torres, op. cit., págs. 273-274.

Además de los elementos necesarios de publicidad y posesión en concepto de dueño, la posesión exigible para la prescripción adquisitiva debe ser pacífica, según se desprende de la intención del legislador plasmada en los Arts. 1841 y 370 del Código Civil. 31 L.P.R.A. secs. 5262 y 1444. Ello, como nos dice Castán Tobeñas, significa que la posesión debe ser "ganada sin violencia, ya que es norma general que en ningún caso puede adquirirse violentamente la posesión mientras exista un poseedor que se oponga a ello". Castán Tobeñas, op. cit., pág. 355. Es decir, debe ser pacífica durante el término necesario para usucapir. Como último requisito estatuido por el legislador para la posesión necesaria para la prescripción adquisitiva, esta debe ser ininterrumpida por el periodo de tiempo establecido en ley. 31 L.P.R.A. sec. 5262; Sucn. Maldonado v. Sucn. Maldonado, supra, pág. 182; véase, además: Puig Brutau, op. cit., pág. 371.

Como se sabe, el plazo o término de tiempo requerido para que se adquiera la propiedad mediante la usucapión varía según la naturaleza de la cosa y de si es una

prescripción adquisitiva ordinaria o extraordinaria. Como nos ilustra Vázquez Bote:

> Respecto de la *ordinaria*, ya sabemos que el plazo es diverso, según se trate de bienes muebles o inmuebles. Para los *muebles*, el art. 1.855, C.c., establece un plazo de tres años, mientras que, tratándose de *inmuebles*, es necesaria una posesión de diez años –si es entre presentes-, y de veinte, si es entre ausentes. Vázquez Bote, op. cit., pág. 380.

De igual manera, nos expresa el mismo autor que, en la usucapión extraordinaria también debe diferenciarse entre la naturaleza mueble o inmueble de la cosa. "Para los *muebles*, el art. 1.855, C.c., fija un plazo de seis años; tratándose de *inmuebles*, el art. 1.859, C.c., fija un plazo de treinta años". Íd.; véase, además: Vélez Torres, op. cit., págs. 276-277. Así, el legislador estableció, en el Art. 1860 del Código Civil, las reglas mediante las cuales se computa el tiempo necesario para la prescripción. 31 L.P.R.A. sec. 5281. A tales efectos, el referido artículo preceptúa que:

> (1)El poseedor actual puede completar el tiempo necesario para la prescripción, uniendo al suyo el del causante.
> (2)Se presume que el poseedor actual, que lo hubiera sido en época anterior, ha continuado siéndolo durante el tiempo intermedio, salvo prueba en contrario.
> (3)El día en que comienza a contarse el tiempo se tiene por entero, pero el último debe cumplirse en su totalidad. Íd; véase, además: Hernández v. Caraballo, 74 D.P.R. 29 (1952).

Cónsono con estas reglas de computación, el efecto que tendrá la prescripción adquisitiva, de acuerdo a la naturaleza del bien y si es ordinaria o extraordinaria,

consiste en la adquisición por el usucapiente del dominio de los demás derechos reales -susceptibles de posesión- sobre las cosas. Véanse Vázquez Bote, op. cit., págs. 383-384; Castán Tobeñas, op. cit., págs. 366-370. Ahora bien, este efecto *ipso iure* de la usucapión no es posible si se interrumpe el término o plazo mediante el cual se posee la cosa o derecho en concepto de dueño de forma pública y pacífica. Por esta razón, el legislador entendió que dicho plazo puede ser interrumpido de varias formas.

Como se sabe, respecto a la interrupción de la usucapión, el Art. 1843 del Código Civil específicamente establece que la "posesión se interrumpe para los efectos de la prescripción, natural o civilmente". 31 L.P.R.A. sec. 5264. Asimismo, es el Código Civil el que dispone que la posesión se interrumpe civilmente: (1) por la citación judicial hecha al poseedor, aunque sea por mandato del tribunal o un juez incompetente; (2) mediante el requerimiento judicial o notarial, siempre que dentro de los dos meses de practicado se presente ante el tribunal o el juez la demanda sobre posesión o dominio de la cosa cuestionada, y (3) por el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véanse Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. secs. 5266, 5268 y 5269; Nissen Holland v. Genthaller, 172 D.P.R. 503, 513 (2007); Vélez Torres, op. cit., pág. 275.

De no interrumpirse el término prescriptivo para la prescripción adquisitiva, el usucapiente adquirirá el dominio de la cosa y, como expresa Castán Tobeñas sobre

este momento, "al ganar el dominio [el usucapiente], tiene a su favor acción para reclamarlo y excepción para oponerse a las reclamaciones de los demás". Castán Tobeñas, op. cit., pág. 366. De esta forma, como lo razona Vázquez Bote, "la usucapión produce sus efectos por sí misma; pero, como consecuencia del principio procesal de justicia rogada, es obvio que, bien mediante excepción, bien mediante ejercicio de la correspondiente acción, siempre que exista contención será necesario acreditarla, ya que los jueces no pueden aceptarla de oficio". Vázquez Bote, op. cit., pág. 384; Vélez Torres, op. cit., págs. 278-279.

B.

### *Régimen de Propiedad Horizontal, el Registro de la Propiedad y la usucapión*

Como reiteradamente hemos expresado, el régimen de propiedad horizontal está rigurosamente supeditado al requisito de inscripción registral. García Larrínua v. Lichtig, 118 D.P.R. 120, 128 (1986); Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978). Por tal razón, como lo exige expresamente el legislador en el Art. 2 de la Ley de Condominios, *supra*, para que exista el régimen de horizontalidad respecto a una propiedad en particular este tiene que constar inscrito en el Registro de la Propiedad. 31 L.P.R.A. sec. 1291.

Sobre este particular, el Profesor Godreau Robles ha mencionado acertadamente que:

> El Tribunal ha reiterado en el caso de
> *García Larrinua v. Lichtig*, lo que ya antes
> había manifestado en *Arce*, en el sentido de

que la Ley ha establecido un verdadero **sistema catastral**, que como tal, constituye una excepción al principio de que el Registro no es garantizador de la cabida de una finca. (Énfasis en el original.) Godreau Robles, op. cit., págs. 19-20.

De esta forma, el mismo autor nos afirma que en dicho sistema catastral las constancias del Registro de la Propiedad sobre un condominio, "si bien no establecen el derecho respecto a la **titularidad** de cada apartamiento – asunto que de surgir controversia solo compete resolver a los tribunales- sí constituye la fuente inexpugnable sobre la configuración física de los apartamentos". (Énfasis suplido.) Íd. pág. 20. Por tal carácter catastral del régimen de propiedad horizontal, en García Larrinua v. Lichtig, *supra*, al amparo del principio de publicidad registral cuando el régimen de horizontalidad queda debidamente constituido mediante inscripción, expresamos que:

> Teniendo el Registro en cuanto dicha ley las características de un catastro, la realidad extraregistral tiene que corresponder con la que surge del Registro. Es por ello que el comprador de un apartamento de un edificio que está sometido al régimen de la Ley de Propiedad Horizontal se le puede oponer e imputar, por ficción de ley, el conocimiento no solo de las constancias del Registro en lo referente a la titularidad del mismo, sino que se le imputa el conocimiento de las "circunstancias particulares", tales como cabida o superficie total, del apartamento individual de que se trate. García Larrinua v. Lichtig, *supra*, pág. 133.

Cónsono con lo anterior, en dicho caso expresamos que, por ficción de ley y a tenor con el principio de la fe

pública registral, la naturaleza catastral del régimen de horizontalidad obliga a que al comprador, de un apartamento de un inmueble sujeto a dicho régimen, se le impute el conocimiento de la cabida o superficie del apartamento que compra. Por ende, las constancias del Registro de la Propiedad deben coincidir con la realidad extrarregistral de los apartamentos de un inmueble sometido al régimen de propiedad horizontal. Íd.; Arce v. Caribbean Home Const. Corp., *supra*; Godreau Robles, op. cit., págs. 20-21; N. Rosado Figueroa & A. L. Córdova, Aspectos registrales en la constitución del régimen de propiedad horizontal y su carácter catastral, 63 Rev. Jur. U.P.R. 857 (1994).

Ahora bien, es preciso aclarar la relación y viabilidad, al amparo del carácter catastral del régimen de propiedad horizontal, de la prescripción adquisitiva en dicho régimen. Esto, pues como afirma ciertamente el Profesor Luis Muñiz Argüelles, este Tribunal en varias ocasiones "ha insinuado que el régimen de propiedad horizontal puede alterarse mediante la usucapión". L. Muñiz Argüelles, Derechos Reales y Derecho Inmobiliario Registral, 77 Rev. Jur. U.P.R. 629, 638 (2008).[18] De esta forma, el Profesor Muñiz Argüelles es del criterio de que si en realidad el régimen de propiedad horizontal está supeditado a un sistema catastral, no es posible que mediante la usucapión se adquieran o modifiquen derechos

---

[18] Es importante notar que el Profesor Muñiz Argüelles se refiere a los casos Álvarez Figueredo v. González Lamela, 134 D.P.R. 374 (1993), Brown III v. J.D. Cond. Playa Grande, 154 D.P.R. 225 (2001) y Nissen Holland v. Genthaller, *supra*.

sin inscripción. Así, el mismo autor expresa que "[d]ecir que se pueden adquirir derechos sobre bienes no previamente individualizados o que se puede variar el uso de una unidad sin inscripción es negar la característica catastral que se proclama". Íd.

Por su parte, el Profesor Godreau Robles tiene un criterio muy distinto sobre la aplicación de la usucapión en el régimen de propiedad horizontal. Así, y comentando el tópico, el autor nos menciona que:

> Ni siquiera el carácter catastral que se le ha reconocido a nuestro régimen, conforme los casos de *Arce* y *García Larrinua v. Lichtig*, debe interpretarse como obstáculo a la usucapión. **La prescripción adquisitiva tiene que ver con la titularidad y no con la configuración física o material del área en cuestión.** (Énfasis en el original y suplido.) M. Godreau Robles, <u>La privatización de los elementos comunes en los condominios: reflexiones en torno a posibles enmiendas a la Ley de Propiedad Horizontal</u>, 66 Rev. Jur. U.P.R. 149, 171-172 (1997).

De igual forma, el tratadista Juan V. Fuentes Lojo, comentando la posibilidad de la usucapión en el régimen de horizontalidad en España, nota que "[l]a doctrina estima que es posible la adquisición de la propiedad del apartamento por usucapión, ya que ha de regirse por las normas comunes". J. V. Fuentes Lojo, <u>Novísima Suma de la Propiedad Horizontal</u>, Ed. Bosch, 1998, Tomo I, pág. 379. De esta forma, nos explica el mismo autor que:

> Todos los inconvenientes que se podrían alegar para tal usucapión, provenientes de la doctrina tradicional referente a la comunidad de bienes, en el sentido de que nunca un comunero puede usucapir con

> independencia la parte indivisa correspondiente a los demás... carecen de aplicación en este régimen especial por la naturaleza de verdadera propiedad individual que tiene. *Íd.*

**A base de los análisis antes mencionados, somos del criterio que no hay nada en la Ley de Condominios, *supra*, que obstaculice que se adquiera la propiedad mediante la prescripción adquisitiva, aun en contra de las constancias del Registro de la Propiedad. Tampoco creemos que el carácter catastral que anunciamos y reiteramos en la jurisprudencia antes reseñada obste para que, de cumplirse con los elementos de la usucapión, se pueda usucapir un bien o derecho en un inmueble sometido al régimen de horizontalidad.**

Habiendo aclarado este asunto, es pertinente repasar la prescripción adquisitiva y sus consecuencias respecto al Registro de la Propiedad. Primeramente, es preciso notar que de ordinario hay dos modalidades mediante las cuales la usucapión se relaciona con las constancias del Registro de la Propiedad, a saber, la prescripción conforme al Registro, o *secundum tabulas*, y la usucapión contra el Registro, también conocida como *contra tabulas*. E. Vázquez Bote, <u>Derecho Privado Puertorriqueño</u>, New Hampshire, Equity Publishing Company, 1991, T. XV, págs. 229-235. Véase, además: R. Roca Sastre *et al.*, <u>Derecho Hipotecario</u>, 9na ed., Barcelona, Ed. Bosch, 2008, Tomo II, Vol. 2, págs. 425-479.

Sobre la usucapión conforme al Registro de la Propiedad, el Art. 106 de la Ley Hipotecaria establece que "[a] los efectos de la prescripción adquisitiva en favor del titular inscrito, será justo título la inscripción, y se presumirá que aquél ha poseído pública, pacífica, ininterrumpidamente y de buena fe durante el tiempo de vigencia del asiento y de los de sus antecesores de quienes traiga causa". 30 L.P.R.A. sec. 2356. Como nos comenta Vázquez Bote, la referida disposición de ley es un complemento de los actos jurídicos defectuosos. A saber, nos dice el autor, "[q]uien es titular registral, pero por un defecto de su título, podría ser desalojado del Registro, no solamente puede invocar la usucapión extrarregistral, sino la propia que opera con fundamento en los asientos registrales, facilitando así la subsanación de aquel acto en otro caso impugnable". Vázquez Bote, op. cit., pág. 229.

Por otro lado, como regla general, es el Art. 107 de la Ley Hipotecaria, 30 L.P.R.A. 2357, que tiene su equivalente en el Art. 36 de la Ley Hipotecaria de España, el que regula lo referente a la prescripción contra el Registro. Citando al reconocido tratadista Roca Sastre, el Profesor Vázquez Bote, mediante una crítica a la redacción del referido artículo, menciona que:

> La regla general citada por el eminente jurista español es: que se pueden usucapir bienes registrados, con perjuicio de su titular, conforme con las normas del más puro Derecho civil. Todo derecho susceptible de posesión es usucapible. Por ello, entre el que prescribe y el dueño del inmueble, y

sus sucesores que no sean terceros protegidos, se califica el título y se computa el plazo conforme con ese Derecho civil. Vázquez Bote, op. cit., págs. 234-235.

Dicho esto, el Art. 107 de la Ley Hipotecaria, *supra*, establece una excepción al principio de imprescriptibilidad que postula que no puede adquirirse un derecho real sobre un inmueble debidamente inscrito en el Registro, como efectivamente es en jurisdicciones como Alemania o Suiza. Véase Rivera Rivera, op. cit., pág. 180. Como surge de la referida disposición, pueden usucapirse bienes inscritos en el Registro a favor de una persona distinta al usucapiente. No obstante ello, el legislador pretendió proteger a un tercero que adquirió confiando en las constancias del Registro y, además, que cumpla con los requisitos elementales de fe pública registral, que no haya conocido ni pudo conocer la usucapión en curso y que no la haya consentido. Íd., págs. 181-182; Atanacia Corp. v. J.M. Saldaña, Inc., 133 D.P.R. 284 (1993). Tal como lo dispone la ley, ese tercer adquirente de un derecho real que implique posesión prevalecerá ante un usucapiente si ejercita la correspondiente acción dentro del año siguiente a la adquisición. 30 L.P.R.A. 2357; véanse, además: Roca Sastre, op. cit., págs. 451-467; Rivera Rivera, op. cit., 181-182; Vázquez Bote, op. cit., 236-240.

C.

### La usucapión de los elementos comunes y privativos

Así las cosas, como bien señala la Opinión del Tribunal en el caso de autos, de la Ley de Condominios,

*supra*, emana un esquema de división de elementos comunes que son regulados detalladamente por los preceptos correspondientes de dicho estatuto. Ello así, es forzoso concluir que el legislador deseó excluir determinados elementos de la estructura de un inmueble sometido al régimen de horizontalidad para que fuesen propiedad pro indiviso de todos los titulares del inmueble. Como lo expresa el Profesor Godreau Robles:

> [s]abemos que respecto a las áreas comunes –que no son propiedad del Consejo de Titulares pues le pertenecen en común pro indiviso a los titulares– se establece la indivisión forzosa de las mismas y, además, su enajenación, en las áreas que la ley lo permite, debe hacerse por voto unánime. Esa es una de las consecuencias inevitables de la indivisión y de la no aplicabilidad al régimen de las normas sobre la copropiedad. M. Godreau Robles, _Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del Presidente para llevar acciones a nombre del condominio_, 64 Rev. Jur. U.P.R. 481, 483 (1995).

De esta forma, la Ley de Condominios, *supra*, es muy clara al establecer varias clasificaciones de elementos comunes, a saber: (1) los elementos comunes generales necesarios, 31 L.P.R.A. sec. 1291i(a); (2) los elementos comunes generales, detallados en el inciso (b) de la misma sección, 31 L.P.R.A. sec. 1291i(b); (3) los elementos comunes limitados, 31 L.P.R.A. sec. 1291j y; (4) los estacionamientos comunes, cuando sean considerados elementos comunes, 31 L.P.R.A. sec. 1291l-1; véase, además: _Rivera Rodríguez v. Junta Dir. I y II_, 173 D.P.R. 475 (2008). Respecto a los elementos comunes generales

necesarios, el legislador estableció que "cualquier pacto que transfiera la titularidad, posesión o control de estos elementos a otra persona natural o jurídica distinta del Consejo de Titulares será nulo". 31 L.P.R.A. sec. 1291i(a)(6). Esto, pues dicha clasificación de elementos comunes, por imperativo de ley, **no son susceptibles de propiedad individual por los titulares y están sujetos a un régimen de indivisión forzosa**. Íd.

De igual manera, la Ley de Condominios, *supra*, establece que, sobre los elementos comunes generales,

> [a]un cuando las áreas enumeradas anteriormente bajo este inciso (b) sean susceptibles de aprovechamiento independiente, no podrán constituirse o enajenarse como áreas privadas, sino para el beneficio del Consejo de Titulares o de uno o varios de los titulares de apartamentos o unidades en el condominio. 31 L.P.R.A. sec. 1291i(b).

Esto parte de que, según la intención legislativa plasmada en el mismo artículo, cuando se enumeran los elementos comunes generales en la ley se hace la salvaguarda que se considerarán como tales dichos elementos "**salvo disposición o estipulación en contrario**". (Énfasis nuestro.) Íd.; véase, además, <u>Brown III v. J.D. Cond. Playa Grande</u>, 154 D.P.R. 225 (2001). Así, pues, el elemento común general, que se diferencia del elemento común general necesario porque puede pertenecer a uno o varios titulares o condóminos, tendrá tal clasificación a menos que en los documentos constitutivos del régimen se estipule o disponga lo contrario. 31 L.P.R.A. sec. 1291i(b); M. J. Godreau

Robles, <u>La Nueva Ley de Condominios</u>, San Juan, Ed. Dictum, 2003, págs. 56-57.

Asimismo, el Art. 14-A de la Ley de Condominios, *supra*, contempla que los estacionamientos del inmueble sean considerados elementos comunes si así se dispone en los documentos constitutivos del régimen. 31 L.P.R.A. sec. 1291l-1. En dicho artículo se especifica detalladamente cómo se utilizará aquel espacio o finca considerada como elemento común del inmueble. Íd. De esta forma, el legislador entendió que era propio concederle a los condóminos la oportunidad de establecer una cantidad de estacionamientos como elementos comunes del inmueble y no como fincas o espacios privativos de los apartamentos de este. Íd.

Por otro lado, los elementos comunes limitados son aquellos que ostentan la naturaleza de común, pero que pueden ser destinados a un número de apartamentos con exclusión de los demás. <u>Arce v. Caribbean Home Const. Corp.</u>, 108 D.P.R. 225, 238 (1978). De esta forma, el Art. 12 de la Ley de Condominios, *supra*, preceptúa que "[t]ambién serán considerados elementos comunes, pero con carácter limitado, siempre que así se acuerde expresamente por la totalidad de los titulares del inmueble, aquellos que se destinen al servicio de cierto número de apartamentos con exclusión de los demás…". (Énfasis nuestro.) 31 L.P.R.A. sec. 1291j. Ante tal lenguaje, se desprende que el legislador quiso condicionar y regular la clasificación de este tipo de elemento aprovechable por

solo un número limitado de apartamentos a que, y si y solo

si, la totalidad de los condóminos lo acordaran de esa

manera. Asimismo, el legislador fue enfáticamente claro en

el Art. 13 de la Ley de Condominios, *supra*, al establecer

que "[l]os elementos comunes, generales y limitados, **se**

**mantendrán en indivisión forzosa y no podrán ser objeto de**

**la acción de división de la comunidad. Cualquier pacto en**

**contrario será nulo"**. (Énfasis nuestro.) 31 L.P.R.A. sec.

1291k.

Como hemos visto, y como correctamente concluye la

Opinión mayoritaria en este caso, los elementos comunes

antes reseñados tienen una regulación específica en el

esquema que establece la Ley de Condominios, *supra*. Dicho

esquema tiene como propósito el que estos elementos

comunes, salvo pacto en contrario cuando se trate de

elementos comunes generales y elementos comunes limitados o

estacionamientos comunes, se mantengan en indivisión

forzosa y que no sean objeto de la acción de división de la

comunidad. **Por ende, al amparo del sistema catastral que**

**reiteradamente le hemos reconocido al régimen de propiedad**

**horizontal en nuestra jurisdicción, entendemos que los**

**bienes comunes antes enumerados y altamente regulados por**

**la Ley de Condominios, *supra*, no son susceptibles a ser**

**adquiridos mediante la prescripción adquisitiva o**

**usucapión. No obstante lo anterior, dicho sistema**

**catastral, según el silencio legislativo al respecto en la**

**Ley de Condominios, *supra*, no obsta para que una persona**

**adquiera mediante usucapión una finca privativa o derecho**

**susceptible de apropiación sobre esta en un bien sometido al régimen de propiedad horizontal.**

Dicho esto, coincidimos con las expresiones de la Opinión mayoritaria al exponer que, con relación a las unidades privativas que integran el inmueble, no hay duda de que **estas pueden ser objeto de prescripción adquisitiva.** Esto, pues el Art. 4 de la Ley de Condominios, *supra*, así lo reconoce al disponer que estas fincas independientes pueden ser objeto de dominio y posesión y de toda clase de actos jurídicos con libertad total del resto del inmueble.

Además, coincidimos con la Opinión mayoritaria cuando establece que no puede proclamarse un cambio en la titularidad de un elemento común sin que ello conlleve un cambio en el destino y uso de este, el cual demanda el consentimiento unánime de los titulares. Nos parece que eso reafirma el hecho de que no podrán adquirirse por prescripción adquisitiva los elementos comunes. Sin embargo, encontramos contradictorio que la Opinión exprese, con el propósito de aclarar, que las unidades privativas sí puedan ser objeto de usucapión pero ello no podrá afectar el destino o naturaleza privativa del bien. Es decir, concluye que las unidades privativas solo podrán ser adquiridas por usucapión por otro titular o un tercero, siempre que se mantenga el uso privativo. Diferimos en condicionar la posibilidad de adquirir unidades privativas por prescripción adquisitiva a que el poseedor lo use para el mismo uso privativo. Entendemos que los requisitos expuestos en el Código Civil y discutidos anteriormente

sobre la prescripción adquisitiva, de posesión civil, pacífica, pública e ininterrumpidamente, y el Art. 4 de la Ley de Condominios, *supra*, permiten el acto jurídico de usucapir sin más limitaciones.

D.

### Consejo de Titulares y los elementos procomunales

Aclarado lo anterior, discrepamos de la interpretación que hace una mayoría de este Tribunal sobre la inaplicabilidad de la figura de la usucapión cuando quien está usucapiendo un elemento o bien privativo es el Consejo de Titulares de un inmueble sometido al régimen de horizontalidad.

El Art. 38 de la Ley de Condominios establece que el Consejo de Titulares es la autoridad suprema del régimen de propiedad horizontal y que tiene personalidad jurídica propia. 31 L.P.R.A. 1293b. Ello sin olvidar que el Art. 1-A de la misma ley establece que el principio primordial del régimen de propiedad horizontal es propiciar el disfrute de la propiedad privada. 31 L.P.R.A. sec. 1291a. Por ello, se decretó la personalidad jurídica del Consejo de Titulares, para ayudar a  fortalecer el régimen de propiedad horizontal. Arce v. Caribbean Home Corporation, 108 D.P.R. 225 (1978); Asociación de residentes pórticos v. Compad, 163 D.P.R. 510 (2004).

Al así reconocerse, sostuvimos que ello convierte al referido cuerpo en un auténtico sujeto de derecho con personalidad plena en el ámbito de sus finalidades. Íd. pág. 253. Como podemos apreciar, esta personalidad jurídica que, conforme a sus fines, se le reconoce en

nuestro ordenamiento jurídico al Consejo de Titulares, se fundamenta no solo en la **potencialidad de un patrimonio propio distinto al de los propietarios individuales** de los apartamientos que componen el inmueble, sino además, en el reconocimiento de que **tiene intereses, deberes y finalidades distintas a las de los titulares** individuales, las cuales pueden ser contrarias y contradictorias a las de determinados titulares en su carácter personal. Cond. Prof. S.J.H. Ctr. v. P.R.F., Inc., 133 D.P.R. 488, 497, (1993); D.A.C.O. v. Junta Cond. Sandy Hills, 169 D.P.R. 586 (2006)(Énfasis suplido).

Por ello, "se justifica la concesión de la personalidad jurídica a una colectividad cuando: (1)[t]enga una función o finalidad distinta a la de los particulares que la integran; (2)[l]os procesos decisionales de la colectividad se efectúen a base de criterios distintos al de esos individuos; y (3)[p]ueda identificarse un patrimonio, o la posibilidad de este, propio de la colectividad, desvinculado del de los particulares". Íd. citando a M. Godreau, El Condominio: el régimen de propiedad horizontal en Puerto Rico, San Juan, Ed. Dictum, 1992, págs. 31-37. Precisamente, con este propósito es que se le confirió personalidad jurídica propia a la colectividad del Consejo de Titulares del régimen de propiedad horizontal.

Asimismo, hemos establecido que parte del patrimonio del Consejo de Titulares lo componen los elementos procomunales establecidos en el Art. 11-A de la Ley de Condominios que expresa que:

> [s]erán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamientos, estacionamientos o locales, cuya titularidad le haya sido asignada al Consejo de Titulares. Lo serán también las unidades privadas que **adquiera** el Consejo de Titulares mediante cesión, ejecución en cobro de deudas o **por cualquier otro medio legítimo**. 31 L.P.R.A. sec. 1291i-1. (Énfasis suplido).

Es decir, **el propio artículo que establece las formas de adquisición de unidades privadas por parte del Consejo de Titulares permite hacerlo por cualquier medio legítimo.** Además, reconoce que se pueda convertir a procomunal un área susceptible de uso privativo. Por tanto, la prescripción adquisitiva podría ser una de las formas legítimas dado que, como bien reconoce la Opinión de este Tribunal, es avalada por la Ley de Condominios, *supra*.

Diferimos en que las unidades privativas pueden ser adquiridas mediante prescripción adquisitiva siempre que no sea por el Consejo de Titulares. Dado que este órgano es la autoridad suprema y tiene como principio fundamental mejorar y propiciar el régimen de propiedad horizontal, entendemos que redundaría en parte del beneficio común que sea este órgano el que adquiera el bien objeto de controversia en el presente caso, y no otro titular o un extraño. Ello armoniza con la intención expuesta de otorgarle personalidad jurídica a esa colectividad.

La Opinión mayoritaria entiende que permitirle al Consejo de Titulares la potestad de adquirir por prescripción adquisitiva parte de los bienes privativos dentro del régimen de propiedad horizontal, que le

corresponde proteger, atenta contra la naturaleza misma de dicho ente. Conforme a lo expuesto, **de la jurisprudencia y de la disposición de ley que le otorga la personalidad jurídica al Consejo de Titulares es evidente que el propósito es desligar las finalidades de los titulares de las del Consejo de Titulares, así como el patrimonio.** Por ello, diferimos en que pueda existir un conflicto en cuanto a la protección del condominio o del propio régimen de propiedad horizontal por el hecho de que el Consejo de Titulares adquiera una unidad privativa. Enfatizamos que, el Art. 11-A de la Ley de Condominios, *supra*, le permite adquirir unidades privativas por cualquier medio legítimo y aun con ese bien le seguirá correspondiendo la administración del condominio.

En fin, las facultades y prerrogativas del Consejo de Titulares responden a la buena administración del condominio. En vista de ello, cómo puede concluir la mayoría de este Tribunal que adquirir -mediante prescripción adquisitiva- el armario de los contadores y las tuberías de desagüe atenta contra las funciones del Consejo o contra el régimen de propiedad horizontal cuando llevan desde 1969 utilizándolo en beneficio de los titulares y en respuesta a sus obligaciones de viabilizar el disfrute de los apartamentos.

III.

En virtud de los fundamentos que anteceden, disentimos de la Opinión mayoritaria de que el Consejo de Titulares no puede ser el que adquiera por prescripción adquisitiva un

bien privativo. Más aun, la mayoría de este Tribunal entiende que "la problemática de reubicar o llegar a un acuerdo para la ubicación de los contadores eléctricos no es justificación para conceder una protección posesoria al Consejo de Titulares". Con esto, resuelve y aclara que los esposos Bravman-González y el Consejo de Titulares del Condominio Palma Real pueden continuar con su problemática fuera de nuestro Foro.

Como afirmó el Tribunal de Apelaciones en este caso, la Ley de Condominios, *supra*, establece que el destino y los usos de los bienes de un inmueble sometido al régimen se pueden variar con el consentimiento unánime de los condóminos. **No obstante lo anterior, guarda silencio sobre la posibilidad de que la propiedad y dominio de un bien, con los derechos que ello acarrea, pueda ser adquirida mediante la prescripción adquisitiva que, como expresamos anteriormente, es un medio de adquisición del dominio de una cosa o derecho. Al no expresar prohibición alguna a la aplicación de la usucapión sobre bienes de un inmueble sometido al régimen de horizontalidad, es forzoso concluir que la prescripción adquisitiva, tal como la regula nuestro Código Civil, es viable en este tipo de régimen especial.** En otras palabras, no hay contradicción entre la Ley de Condominios, *supra*, y las disposiciones del Código Civil sobre prescripción adquisitiva.

Como vimos, el Consejo de Titulares tiene personalidad jurídica propia y puede adquirir unidades privadas. Así las cosas, analicemos si en este caso cumplió con los

requisitos de la prescripción adquisitiva para adquirir el dominio del armario en controversia. En primer lugar, es evidente que el Consejo de Titulares no tiene justo título ni buena fe, pues los documentos constitutivos del régimen de propiedad horizontal sobre el Condominio establecen que dicho armario es parte del apartamento 1-G, destinado a uso privativo. Por lo tanto, el Consejo de Titulares solo podía usucapir el bien mediante la prescripción adquisitiva extraordinaria y contra las constancias del Registro.

Según se desprende de los hechos tomados como ciertos por los foros inferiores, el Consejo de Titulares ha poseído y utilizado el referido armario para colocar contadores de energía eléctrica, desagües y tuberías desde 1969. El acceso de ese armario al apartamento 1-G fue eliminado y se creó un acceso por el lado contrario del armario para que la Autoridad de Energía Eléctrica pudiera entrar a revisar los seis contadores de luz que se colocaron originalmente. Según los hechos del caso, el Consejo de Titulares ha utilizado y administrado este armario en concepto de dueño, no como poseedor con licencia, permiso o por mera tolerancia de los titulares registrales del apartamento 1-G. De hecho, el propietario original del apartamento, FM Investment Corp., nunca tuvo acceso al armario. Por tal razón, somos del criterio que el Consejo de Titulares satisface el requisito de poseedor civil necesario para que sea aplicable la usucapión en este caso. Cabe añadir que, diferimos de la conclusión a la que llega la mayoría de este Foro al decir que el Consejo de

Titulares actuó en capacidad representativa. Por lo discutido sobre el poseedor civil y los fundamentos y propósitos de la personalidad jurídica propia e independiente del Consejo de Titulares, no estamos de acuerdo.

Asimismo, según la prueba testifical tomada como cierta por el foro primario, el Consejo de Titulares ha poseído dicho armario de forma pública. Es de notar que, la Sra. Yolanda Passalacqua, quien ha residido ininterrumpidamente desde noviembre de 1969 en el Condominio, testificó que el armario siempre se ha utilizado a los fines de albergar contadores de luz, desagües y tuberías de agua. Además, surge del expediente que la posesión en concepto de dueño y de forma pública se realizó sin violencia alguna. No contamos con prueba que nos indique lo contrario.

Habiendo establecido que el Consejo de Titulares ha poseído el armario en concepto de dueño, de forma pública y pacífica, es necesario determinar si lo ha poseído de esta manera ininterrumpidamente. Como se dijo anteriormente, el dueño original del apartamento presentó en 1993 una demanda ante el foro primario en la que le imputó al Consejo de Titulares que estaban utilizando un armario de su apartamento para fines comunales. El Tribunal de Primera Instancia, sin embargo, desestimó, mediante sentencia, la demanda por el incumplimiento reiterado de la parte demandante y por inactividad. Por tal razón, según hemos interpretado el Art. 1846 del Código Civil, *supra*, no basta

con que se inicie un pleito contra el reclamante de dominio para que ocurra la interrupción civil, sino que se requiere que el demandante prosiga su caso hasta una terminación victoriosa. Véanse Sucn. Rosa v. Sucn. Jiménez, 77 D.P.R. 551 (1954); Ex parte Reyes, 68 D.P.R. 854 (1948). Por ende, al haberse desestimado la causa de acción presentada por FM Investment Corp., por inactividad e incumplimiento craso ante ese foro, es forzoso concluir que el término de treinta años, contados desde 1969, para adquirir el armario mediante la prescripción adquisitiva extraordinaria nunca se interrumpió.

**A base de lo expresado anteriormente, entendemos que el Consejo de Titulares del Condominio poseyó el armario por más de treinta años en concepto de dueño, pública, pacífica e ininterrumpidamente, por lo que adquirió el dominio del mismo.** Lo adquirió en cumplimiento de los requisitos especificados en la ley sobre prescripción adquisitiva extraordinaria y contra las constancias del Registro de la Propiedad. Así las cosas, los esposos Bravman-González adquirieron el apartamento 1-G en junio del 2001, mientras que presentaron la presente demanda en junio de 2003, dos años luego de adquirido el apartamento. Cónsono con nuestro ordenamiento registral inmobiliario, estos no pueden alegar tercería registral y así impugnar la usucapión consumada, por haber presentado su acción dos años después de adquirido el apartamento.

Resuelto que el Consejo de Titulares adquirió el dominio sobre el armario en cuestión, entendemos que podían

hacerlo en virtud de su personalidad jurídica y del Art. 11-A de la Ley de Condominios, *supra*, que trata sobre su patrimonio:

> Serán elementos procomunales aquellas áreas susceptibles de aprovechamiento independiente, sean apartamentos, estacionamientos o **locales**, cuya titularidad le haya sido asignada al Consejo de Titulares. Lo serán también las unidades privadas que adquiera el Consejo de Titulares mediante cesión, ejecución en cobro de deudas **o por cualquier otro medio legítimo**. (Énfasis suplido.) Íd.

Asimismo, como se expresa en la Sec. 1291i-1 de la Ley de Condominios, *supra*, las áreas susceptibles de aprovechamiento independiente, como el armario en este caso, serán elementos procomunales al ser adquiridos por el Consejo de Titulares mediante cualquier medio legítimo. Por ello insistimos en que, el Consejo de Titulares adquirió el dominio del armario mediante la usucapión extraordinaria, por lo que debemos concluir que dicho armario lo adquiere como bien procomunal del Condominio. Contrario a lo que decide la Opinión mayoritaria, el mismo artículo permite el cambio a procomunal de un área susceptible de aprovechamiento independiente.

No obstante, con la Opinión que hoy emite una mayoría de esta Curia, se pone en entredicho el funcionamiento del régimen de propiedad horizontal y la convivencia de una comunidad que se verá forzada a adquirir de los peticionarios el derecho a continuar teniendo acceso a los servicios básicos, o a reubicar a su costo dichos servicios. El remedio, o la falta de, que ofrece la

Opinión no solo nos parece incorrecto sino injusto, dada las circunstancias particulares del caso. Por todo lo anterior, confirmaríamos la sentencia emitida por el Tribunal de Apelaciones, y ordenaríamos la desestimación de la demanda presentada por los peticionarios ante el Tribunal de Primera Instancia.


                              Federico Hernández Denton
                              Juez Presidente